680 A.2d 618

KUBIS & PERSZYK ASSOCIATES, INC., D/B/A ENTRE COMPUTER, PLAINTIFF–APPELLANT, v. SUN MICROSYSTEMS, INC., SUN MICROSYSTEMS COMPUTER CORPORATION, KARL E. HOLZTHUM, ELLIOT MAYO, AND ROBERT B. KLOPMAN, DEFENDANTS–RESPONDENTS.

Argued February 26, 1996—Decided July 23, 1996.

*Douglas S. Eakeley* argued the cause for appellant (*Lowenstein, Sandler, Kohl, Fisher & Boylan,* attorneys; *Mr. Eakeley* and *Maureen A. Ruane,* on the briefs).

*Andrew T. Berry* argued the cause for respondents (*McCarter & English,* attorneys; *Mr. Berry* and *Teresa L. Moore,* on the brief).

The opinion of the Court was delivered by

STEIN, J.

In *Instructional Systems, Inc. v. Computer Curriculum Corp.,* 130 *N.J.* 324, 614 *A.*2d 124 (1992), we declined to enforce a provision in a franchise agreement subject to the New Jersey Franchise Practices Act, *N.J.S.A.* 56:10–1 to –15 (Franchise Act), mandating that the agreement and the relationships of the signatory parties be governed by California law. We determined that application of California law to the franchise agreement in issue "would be contrary to a fundamental policy of [New Jersey] which has a materially greater interest than [California] in the determination of the particular issue and which * * * would be the state of the applicable law in the absence of an effective choice of law by the parties." *Id.* at 342, 614 *A.*2d 124 (quoting *Restatement (Second) of Conflict of Laws* § 187(2)(b) (1969)).

The franchise agreement involved in this appeal also provides that it shall be governed by California law, and in the same subparagraph requires that any suit related to the agreement "be brought exclusively in the United States District Court for Northern California or the California Superior Court for the County of

Santa Clara." When the franchisor terminated the agreement in October 1993, the franchisee instituted suit in the Law Division of the Superior Court of New Jersey, and that court dismissed the action on the franchisor's motion, holding that the forum-selection clause was enforceable. In an unreported opinion, the Appellate Division affirmed the dismissal on the condition that the California court apply New Jersey law if it concluded that the agreement between the parties constituted a franchise subject to the Act, and temporarily enjoined termination of the agreement until an application for injunctive relief could be filed with and adjudicated by the designated California court.

We granted plaintiff's petition for certification, 142 *N.J.* 571, 667 *A.*2d 189 (1995), to consider the enforceability of forum-selection clauses in franchise agreements subject to the Act. We reverse.

I

Plaintiff, Kubis & Perszyk Associates, Inc., doing business as Entre Computer (Entre), was a New Jersey corporation founded in 1983 by its sole owners, Robert Kubis and Benedict Perszyk. From 1983 to mid–1990, Entre was a franchisee of Entre Computer Centers, Inc., engaging in the sale of personal computers manufactured by IBM, Compaq, and other producers.

Defendant Sun Microsystems, Inc. is a California corporation engaged in the distribution of computing technologies, products, and services. Its subsidiary, defendant Sun Microsystems Computer Corp. (Sun Computer), is primarily responsible for marketing the computer-hardware segment of Sun Microsystem's business, including workstations, servers, central processing units, and operating systems. Sun Computer sells its products through a direct sales force as well as through indirect resellers. Allegedly, Sun Microsystems and Sun Computer (collectively "Sun") command a large share of the growing market for computer workstations and servers. Sun maintains three New Jersey offices.

Sun solicited Entre in 1990 to serve as a reseller of Sun products. Entre elected to become a Sun distributor, committing

itself to de-emphasizing the sale of personal computers to concentrate on marketing Sun's more sophisticated workstations and operating systems. Sun and Entre entered into a Value Added Dealer Agreement as of December 21, 1990. That agreement was superseded as of April 9, 1993, by a new Indirect Value Added Reseller Agreement (IVAR Agreement). Pursuant to the IVAR Agreement, Entre was obligated to use its best efforts to promote the sale of Sun products and to market those products in accordance with a Sun-approved business plan. Entre agreed to maintain a prescribed inventory of Sun demonstration products at its sales office, and to employ a Sun-trained sales representative and systems engineer. Entre was also authorized to distribute and sub-license Sun software for use on Sun Central Processing Units sold to Entre customers, and to use the Sun Value Added Reseller logo and Sun trademarks in its advertising and marketing materials. Entre alleges that its sales of Sun products totaled $4,866,-490.23 in 1991, constituting 86.3% of Entre's total sales, and $4,052,479.07 in 1992, comprising 85.7% of Entre's sales.

The IVAR Agreement described the contracting parties as independent contractors, stating expressly that no other relationship was contemplated: "The parties are independent contractors under this Agreement and no other relationship is intended, including a partnership, franchise, joint venture, agency, employer/employee, or master/servant relationship."

The critical provision of the IVAR Agreement is subparagraph 17A, entitled Dispute Resolution, which provides:

> Any action related to this Agreement will be governed by California law, excluding choice of law rules, and will be brought exclusively in the United States District Court for Northern California or the California Superior Court of the County of Santa Clara. The parties hereby submit to the personal jurisdiction and venue of such courts.

Sun states that Entre's principals did not object to the forum-selection clause before signing the IVAR Agreement and asserts that the clause was negotiable. Entre characterizes the forum-selection clause as a "boilerplate" provision in Sun's standard

contract, and Entre's principals assert that they did not believe that the clause was negotiable.

Entre alleges that Sun's decision to terminate their relationship was precipitated by the individual defendants who were employed by Sun as part of its direct sales force in New Jersey. Entre contends that those defendants interfered with a large Entre sale of Sun products to AT&T, disparaged Entre's abilities and services to potential customers, and refused to provide information and assistance contemplated by the IVAR Agreement. According to Entre, those defendants allegedly induced Sun to terminate the IVAR Agreement by letter of October 1, 1993, effective as of December 31, 1993. Entre asserts that the termination was without good cause.

Entre instituted this action against Sun and the individual defendants in December 1993, alleging in part that the termination of the IVAR Agreement violated the Franchise Act and that the defendants tortiously interfered with Entre's business relationships. Entre sought to enjoin termination of its contract, and also sought damages and counsel fees. Sun moved for dismissal of the complaint on the basis of the forum-selection clause. Without addressing whether the underlying contract was subject to the Franchise Act, the Law Division dismissed the complaint, concluding that the forum-selection clause was enforceable. Prior to resolving Entre's appeal, the Appellate Division stayed the order of dismissal and temporarily enjoined Sun from terminating the agreement and from instituting an action against Entre in California.

Before the Appellate Division, Sun contended that its relationship with Entre did not constitute a franchise. However, Sun conceded that if its agreement were determined to create a franchise, the choice-of-law provision would not be enforceable and the rights of the parties would be governed by the Franchise Act. The Appellate Division also took note of Sun's concession that, if the forum-selection clause were to be sustained, dismissal of the New Jersey action could be conditioned on the California court's

application of the Franchise Act to the parties' relationship, with the result that the agreement's choice-of-law provision would apply only if the California court determined that no franchise had been created.

The Appellate Division concluded that the forum-selection clause should be enforced, observing that "we should trust the courts of California to be as protective of the rights of the New Jersey litigant under New Jersey law as it would hope another state would protect a California resident under California law, if the case were referred elsewhere." The court stated:

> We do not see our enforcement of these clauses as committing our residents to the "tender mercies" of provincial judges. Rather, we are merely permitting the decision to be made by a jurist of a sister state who will fairly and impartially adjudicate the dispute between the parties in accordance with the governing law, which in this case might happen to be the law of New Jersey.

The Appellate Division's affirmance of the dismissal order was conditioned on the California court's applying New Jersey law to ascertain whether a franchise existed and, if so, the rights of the parties, and the court continued its temporary injunction in effect until an application for similar relief could be presented to a California court.

## II

### A. New Jersey Franchise Practices Act

Primarily, we note our agreement with the assumption implicit in the Appellate Division's decision that the enforceability of the forum-selection clause should be determined prior to final resolution of the question whether Sun's agreement with Entre constitutes a franchise subject to the Franchise Act. In our view, the latter issue should be resolved on remand by the Law Division on the basis of an adequate record, informed by the analysis of the definitional components of a franchise set forth in *Instructional Systems, Inc., supra,* 130 *N.J.* at 351–66, 614 *A.2d* 124. For purposes of resolving the enforceability of forum-selection clauses in franchise agreements, we shall assume that the Sun–Entre agreement is a franchise subject to the Franchise Act.

To determine whether forum-selection clauses are reconcilable with the broad statutory protections accorded to New Jersey franchises under the Franchise Act, we first review the conditions that prompted the Legislature to pass the Act as well as the provisions enacted to compensate for the economic imbalance between franchisors and franchisees. As the Court observed in *Westfield Centre Service, Inc. v. Cities Service Oil Co.,* 86 *N.J.* 453, 432 *A.*2d 48 (1981):

> Though economic advantages to both parties exist in the franchise relationship, disparity in the bargaining power of the parties has led to some unconscionable provisions in the agreements. Franchisors have drafted contracts permitting them to terminate or to refuse renewal of franchises at will or for a wide variety of reasons including failure to comply with unreasonable conditions. Some franchisors have terminated or refused to renew viable franchises, leaving franchisees with nothing in return for their investment. Others have threatened franchisees with termination to coerce them to stay open at unreasonable hours, purchase supplies only from the franchisor and at excessive rates or unduly expand their facilities.

> [*Id.* at 461–62, 432 *A.*2d 48.]

*See also Shell Oil Co. v. Marinello,* 63 *N.J.* 402, 408, 307 *A.*2d 598 (1973) ("[I]t becomes apparent that Shell is the dominant party and that the relationship lacks equality in the respective bargaining positions of the parties. For all practical purposes Shell can dictate its own terms."), *cert. denied,* 415 *U.S.* 920, 94 *S.Ct.* 1421, 39 *L.Ed.*2d 475 (1974).

At the legislative hearing preceding enactment of the Franchise Act, several proponents of the Act complained that franchise agreements often were contracts of adhesion, the franchisors not being willing to negotiate in good faith about terms and conditions of the franchise. A witness representing gasoline retailers stated that "our dealers ... should take these contracts—these franchise contracts—to their lawyers [ ], but the pressure is put on them to sign these things in a hurry and often they do sign them with clauses in them that should not be there." *Franchise Practices Act: Hearing on A. 2063 Before the Assembly Judiciary Comm.,* 194th Leg., 2d Sess., at 29 (March 29, 1971) (statement of Jacob Petuska, President, N.J. Gasoline Retailers Assoc.). Another witness observed: "At the core of the franchise relationship is

unilateral control exercised by the franchisor over every aspect of the franchisee's business. . . . The franchise agreement in many cases is not a matter of mutual consent but actually a contract of adhesion—either take it or leave it." *Id.* at 35 (statement of Robert M. Burd, President, N.J. Automobile Dealers Assoc.). Another witness acknowledged the problem of unequal bargaining power:

> When a man wants to sign up for a particular franchise, I think that he should have an ability to negotiate the contractual relationship pursuant to which, in many instances, his entire life savings are going to be invested. However, the older more established businesses, franchisors, such as in the automobile industry, will not tolerate the negotiation of even a comma, even a period.
>
> [*Id.* at 114 (statement of Glen Davis, Esq., representing Gulf Oil Corp.).]

Another recurring theme at the hearing on the Franchise Act was the complaint that franchisees whose contracts were cancelled could not obtain prompt and effective judicial relief. As one veteran Buick dealer explained:

> Today, if I wanted to sue the manufacturer on a vital issue, such as cancellation, it would cost me somewhere between one-quarter and one-half million dollars. And today I could very likely be out of business two or three years before the situation came to a hearing.
>
> This bill—one of the greatest things in this bill, as the gasoline dealer testified to, is that it gives us a day in court. It gives us virtually an automatic injunction if our cause for going into court is reasonable. Today this is very difficult to get.
>
> [*Id.* at 52–53 (statement of Walter W. Stillman).]

Another automobile-dealer representative concurred:

> A–2063 would utilize our own State courts—the traditional forum for resolving disputes between businessmen—as the arbitrator of any dispute that may arise in the franchise relationship. . . . Today in New Jersey, a franchisee has no automatic right to obtain an injunction against a capricious cancellation. Without adequate notice or injunctive relief—both of which are provided in A–2063—a dealer could be put out of business immediately.
>
> . . . By the time a dealer obtains a court ruling, his place of business could long since have been closed. Even if he wins in court, he would most likely find it almost impossible to renew operations. A–2063 would give the small businessman adequate time to begin a court action to preserve his business.
>
> [*Id.* at 39–40 (statement of Robert M. Burd, President, N.J. Automobile Dealers Assoc.).]

Gulf Oil Corporation's representative also endorsed the proposed bill's provision authorizing injunctive relief:

> What [A–2063] does is establish, quite clearly and conclusively, a course of action which a dealer would merely point to and allege in his pleadings, that given acts or actions on the part of the franchisor are unreasonable, and, based upon that, a court—a chancery court—would, assuming the validity of the allegations of unreasonableness and the acts complained of, grant the interlocutory relief on a temporary basis so that the case could proceed.
>
>   One of the tactics utilized in fighting termination cases by the manufacturers, of course, is their overwhelming resources. So, the harder they make it to get that initial injunction, the more likely they will be able to avoid the determination of the ultimate issues by an impartial court of law—a tactic that in itself is somewhat unfair and, if you will, subversive of the American system of jurisprudence.
>   [*Id.* at 117–18 (statement of Glen Davis, Esq., representing Gulf Oil Corp.).]

As enacted, the Franchise Act addressed the concerns relating to both unequal bargaining power and the unavailability of prompt judicial relief. The Act expressly prohibits franchisors from requiring franchisees to agree to unreasonable standards of performance, or to releases or waivers that would relieve franchisors from liability under the Act. *N.J.S.A.* 56:10–7. In addition, termination of or failure to renew a franchise without good cause constitutes a violation of the Act, and good cause is limited to a franchisee's failure "to substantially comply with those requirements imposed ... by the franchise." *N.J.S.A.* 56:10–5. The Act expressly authorizes franchisees to institute suit against franchisors "in the Superior Court of the State of New Jersey to recover damages sustained by reason of any violation of this act and, where appropriate, ... [for] injunctive relief." *N.J.S.A.* 56:10–10. Successful franchisees are also entitled to recover reasonable attorney's fees. *Ibid.*

In 1989, the Legislature amended the Act, *L.* 1989, *c.* 24, specifically to enhance the protection afforded to motor-vehicle franchisees. The legislative findings incorporated in the amendment included declarations that inequality of bargaining power continues to favor motor-vehicle franchisors notwithstanding the provisions of the Franchise Act; that such inequality of bargaining power enables such franchisors to compel motor-vehicle franchisees to execute agreements containing detrimental terms and conditions that require franchisees "to relinquish their rights ... established by the [Franchise Act];" and that such terms and

conditions deny to motor-vehicle franchisees "the opportunity to have disputes ... heard in an appropriate venue, convenient to both parties, by tribunals established by statute for the resolution of these disputes." *N.J.S.A.* 56:10-7.2. The Sponsor's Statement also observed that under the Franchise Act and similar state statutes, the franchisees' rights

> generally are enforceable in state courts or through state agencies. However, in the last several years manufacturers and distributors have sought to circumvent these laws by offering dealers franchise renewal agreements which require them to settle disputes through compulsory arbitration instead of exercising their rights as spelled out under New Jersey law. Other proposed agreements transfer the disputes from New Jersey's courts or administrative tribunals, as provided by the "Franchise Practices Act," to another state.
>
> [*Sponsor's Statement to S. 2737, L.* 1989, c. 24 (June 30, 1988).]

Accordingly, the 1989 amendment provides that a motor-vehicle franchisor violates the Act if it requires a motor-vehicle franchisee to accept a provision in a franchise agreement that specifies the jurisdictions in which disputes shall or shall not be submitted for resolution or prohibits a motor-vehicle franchisee from instituting suit in a forum otherwise available under New Jersey law. Any such provision may be revoked by the franchisee by notice to the motor-vehicle franchisor within sixty days of receipt of the executed franchise agreement. *N.J.S.A.* 56:10-7.3. Pursuant to the amendment, forum-selection clauses are presumed to be invalid unless the franchisor can prove that it offered the franchisee the opportunity to sign an identical franchise agreement containing no forum-selection clause. *Ibid.*

Sun contends that the 1989 amendment reflects the Legislature's intention to prohibit forum-selection clauses only in motor-vehicle franchise agreements. We agree that by the amendment the Legislature effectively invalidated forum-selection clauses in franchise agreements covering automobile dealerships. However, the legislative findings persuade us that the Legislature considered such clauses in general to be inimical to the rights afforded all franchisees under the Act. The Legislature apparently elected to limit their express prohibition only to motor-vehicle franchises based on its determination that the use of unequal bargaining

power to compel the inclusion of such clauses was largely confined to motor-vehicle franchise agreements.

## B. Forum–Selection Clauses

The earliest attempts by parties to designate the jurisdiction in which suits against them could be instituted were generally rejected by state and federal courts. For example, in *Nute v. Hamilton Mutual Insurance Co.*, 72 *Mass.* (6 *Gray* ) 174 (1856), the insurance company's by-laws required suits to be brought in the County of Essex and the insured filed suit in the County of Suffolk. Rejecting the insurance company's plea of lack of jurisdiction, the court held that no agreement of the parties can alter the legal rules that determine "in what courts and counties actions may be brought." *Id.* at 184. The principle developed that "parties by agreement cannot oust a court of jurisdiction otherwise obtaining." *Wm. H. Muller & Co. v. Swedish Am. Line Ltd.*, 224 *F.*2d 806, 808 (2d Cir.), *cert. denied*, 350 *U.S.* 903, 76 *S.Ct.* 182, 100 *L.Ed.* 793 (1955); *cf. Krenger v. Pennsylvania R. Co.*, 174 *F.*2d 556, 561 (2d Cir.1949) (Hand, J., concurring) ("In truth, I do not believe that, today at least, there is an absolute taboo against such contracts at all; in the words of the Restatement, they are invalid only when unreasonable."), *cert. denied*, 338 *U.S.* 866, 70 *S.Ct.* 140, 94 *L.Ed.* 531 (1949). *See generally* Arthur Lenhoff, *The Parties' Choice of a Forum: "Prorogation Agreements,"* 15 *Rutgers L.Rev.* 414, 430–39 (1961) (reviewing earlier cases and contemporary approaches to forum-selection clauses).

The modern approach to the question of enforceability of forum-selection clauses is characterized by the United States Supreme Court's decision in *M/S Bremen v. Zapata Off–Shore Co.*, 407 *U.S.* 1, 92 *S.Ct.* 1907, 32 *L.Ed.*2d 513 (1972), in which the Court enforced a forum-selection clause in a contract between Zapata, a Texas-based American corporation engaged in the oil-drilling business, and Unterweser Reederei GMBH, a German corporation engaged in the vessel-towing business. Unterweser had contracted to tow Zapata's ocean-going, self-elevated drilling rig (Chaparral) from Louisiana to the Adriatic Sea near Ravenna, Italy, where

Zapata planned to drill for oil. Responding to Zapata's request for towing bids, Unterweser was the low bidder and submitted a contract that provided: "Any dispute arising must be treated before the London Court of Justice." 407 *U.S.* at 2, 92 *S.Ct.* at 1909, 32 *L.Ed.*2d at 516. Zapata reviewed the contract and negotiated various modifications, but did not seek to modify the forum-selection clause. *Id.* at 3, 92 *S.Ct.* at 1910, 32 *L.Ed.*2d at 516.

While Unterweser's deep-sea-tug Bremen was towing the Chaparral in the Gulf of Mexico *en route* to Italy, a severe storm caused the Chaparral's elevator legs to break off, seriously damaging the vessel. Zapata instructed the Bremen to tow the damaged rig to Tampa, Florida, the nearest port. Zapata then instituted a suit in admiralty in the federal court in Tampa against Unterweser and against the Bremen *in rem*, alleging negligence and breach of contract. Invoking the forum-selection clause, Unterweser moved to dismiss for lack of jurisdiction or on *forum non conveniens* grounds. The District Court denied Unterweser's motion on the basis that forum-selection clauses were contrary to public policy, and a divided panel of the Court of Appeals affirmed. *Id.* at 4–8, 92 *S.Ct.* at 1910–12, 32 *L.Ed.*2d at 517–19.

Reversing, the Supreme Court observed that "[t]he expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts." *Id.* at 9, 92 *S.Ct.* at 1912, 32 *L.Ed.*2d at 519–20. Concluding that forum-selection clauses should be enforced unless "enforcement is shown by the resisting party to be 'unreasonable' under the circumstances," *id.* at 10, 92 *S.Ct.* at 1913, 32 *L.Ed.*2d at 520, the Court noted that the contract in question was "a freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power." *Id.* at 12, 92 *S.Ct.* at 1914, 32 *L.Ed.*2d at 522. The Court observed that because the vessel was to be towed a long distance through international waters, the parties could reasonably conclude that a forum-selec-

tion clause was in their mutual interest and was taken into account in negotiating the financial terms of the agreement. *Id.* at 13–14, 92 *S.Ct.* at 1915, 32 *L.Ed.*2d at 522–23. The Court acknowledged that "[a] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Id.* at 15, 92 *S.Ct.* at 1916, 32 *L.Ed.*2d at 523. The Court remanded the matter to the District Court to permit Zapata to attempt to prove that "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Ibid.*

The holding in *The Bremen* represents the prevailing view on the enforceability of forum-selection clauses, and is consistent with the position adopted by the *Restatement (Second) of Conflict of Laws* § 80 (1969) ("The parties' agreement as to the place of the action cannot oust a state of judicial jurisdiction, but such an agreement will be given effect unless it is unfair or unreasonable."). The *Bremen* approach generally has been applied by federal and state courts confronted by jurisdictional choices involving forum-selection clauses. *See, e.g., Carnival Cruise Lines, Inc. v. Shute,* 499 *U.S.* 585, 593–95, 111 *S.Ct.* 1522, 1527–28, 113 *L.Ed.*2d 622, 632–33 (1991) (upholding, 7–2, validity of forum-selection clause in form cruise-ship passage contract although not subject to bargaining, and noting special interest of cruise line in limiting fora in which passengers might sue and that enforcement of clause benefits passengers because cruise line's savings undoubtedly are reflected in lower fares); *Moses v. Business Card Express, Inc.,* 929 *F.*2d 1131, 1136–39 (6th Cir.) (upholding Michigan district court's discretionary ruling not to return venue to Alabama after Alabama district court changed venue from Alabama to Michigan in damage suit by Alabama franchisee pursuant to contract requiring that suit be brought only in Michigan court, but noting that forum-selection clause is not dispositive of change of venue motions and should be considered along with convenience of parties and witnesses and overall fairness, and concluding that transfer did not constitute abuse of discretion), *cert. denied,* 502

*U.S.* 821, 112 *S.Ct.* 81, 116 *L.Ed.*2d 54 (1991); *Plum Tree, Inc. v. Stockment,* 488 *F.*2d 754 (3d Cir.1973) (reversing district court decision granting franchisee's motion to transfer franchisor's Pennsylvania action to Texas on ground that forum-selection clause designating Pennsylvania as place of suit was contrary to public policy, and remanding to district court to reconsider on adequate record whether enforcement of forum-selection clause would be unreasonable); *Kline v. Kawai Am. Corp.,* 498 *F.Supp.* 868 (D.C.Minn.1980) (transferring dealer's Minnesota action against supplier of pianos and organs to California based on forum-selection clause in "boilerplate" dealer agreement, and finding dealer had failed to sustain burden of proving that enforcement of forum-selection clause would be unreasonable); *Dick Proctor Imports, Inc. v. Sumitomo Corp. of Am.,* 486 *F.Supp.* 815 (E.D.Mo.1980) (granting franchisor's motion to transfer franchisee's Missouri action to New York pursuant to forum-selection clause, and holding that enforcement of forum-selection clause was neither unreasonable nor incompatible with Missouri public policy); *ABC Mobile Sys., Inc. v. Harvey,* 701 *P.*2d 137 (Colo.Ct.App. 1985) (enforcing forum-selection clause designating California as exclusive forum against California franchisor that relocated to Massachusetts and sued franchisee in Colorado, and holding enforcement of clause against franchisor not unreasonable notwithstanding franchisor's contention that clause was inserted in contract primarily for its benefit); *Horner v. Tilton,* 650 *N.E.*2d 759 (Ind.Ct.App.1995) (dismissing dealer's suit against supplier filed in Marion County, Indiana, and enforcing forum-selection clause designating Peoria County, Illinois, as exclusive forum, holding that underlying agreement did not constitute franchise, finding that forum-selection clause was not product of overreaching or unequal bargaining power, and noting that enforcement of clause would not impose heavy burden on dealer); *Jacobson v. Mailboxes Etc. U.S.A., Inc.,* 419 *Mass.* 572, 646 *N.E.*2d 741 (1995) (holding that franchise agreement designating California courts as exclusive forum and California law as controlling required court to determine whether forum-selection clause was enforceable under

California law; concluding that such clauses were enforceable under California law if not unreasonable, but remanding to trial court to determine whether pre-contract claims for deceit were dominant claims alleged, in which event forum-selection clause in franchise contract would not apply); *Minuteman Press Int'l, Inc. v. Hoffman,* 826 *S.W.*2d 34 (Mo.Ct.App.1992) (holding that Missouri courts would enforce New York judgment obtained by franchisor against Missouri franchisee where New York action was instituted pursuant to forum-selection clause of franchise agreement; concluding that franchisees were validly served with process under New York's long-arm statute and that enforcement of forum-selection clause, which was not product of fraud or overreaching, would be reasonable); *Bakhsh v. JACRRC Enters., Inc.,* 895 *P.*2d 746 (Okla.Ct.App.1995) (affirming trial court's decision dismissing franchisee's Oklahoma action against franchisor, and holding that enforcement of forum-selection clause designating Texas as exclusive forum was not unreasonable).

Some courts applying the *Bremen* standard have nevertheless determined that forum-selection clauses need not invariably be honored. In *Hoffman v. Minuteman Press International, Inc.,* 747 *F.Supp.* 552 (W.D.Mo.1990), a franchisee sued its franchisor in Missouri alleging pre-contract fraud and breach of the franchise agreement. The franchisor moved to change venue to New York, relying on the contract's forum-selection and choice-of-law clauses. The court acknowledged that in resolving change-of-venue motions under 28 *U.S.C.* § 1404(a), a forum-selection clause is a significant factor, along with the convenience of parties and witnesses and other practical considerations relating to trial convenience. *Id.* at 553–54. The court noted "the extreme hardship that litigating in New York would impose on these plaintiffs" and that the defendant could easily accommodate litigation in Missouri. *Id.* at 559. The court also observed that the complaint alleged that plaintiffs were fraudulently induced to enter into the franchise contract that contained the forum-selection clause, an allegation that, if proved, would render the clause "not worth the paper on which it is

written." *Ibid.* Accordingly, the court denied defendant's motion to transfer.

A Wisconsin federal court declined to enforce a forum-selection clause in *Cutter v. Scott & Fetzer Co.*, 510 *F.Supp.* 905 (E.D.Wis. 1981), primarily on the basis that Wisconsin's Fair Dealership Law was intended to provide remedies to dealers beyond those available at common law, the court concluding that the statute's underlying remedial purposes would best be served by denying the franchisor's motion to transfer venue to Ohio. *Id.* at 909. The court also observed that the franchise agreement contained predominately "boilerplate" language and that there was no indication in the record that the forum-selection clause was the subject of negotiation between the parties. *Id.* at 908; *see also Lulling v. Barnaby's Family Inns, Inc.*, 482 *F.Supp.* 318, 320–21 (E.D.Wis. 1980) (citing *The Bremen*, but declining to enforce forum-selection clause in franchise agreement; relying primarily on public policy reflected in Wisconsin Franchise Investment Law, and concluding that Wisconsin public policy can best be enforced by Wisconsin courts); *Wimsatt v. Beverly Hills Weight Loss Clinics Int'l, Inc.*, 32 *Cal.App.*4th 1511, 38 *Cal.Rptr.*2d 612 (1995) (declining to enforce Virginia forum-selection clause in California suit against Virginia franchisor; relying on strong public policy underlying California's Franchise Investment Law, which voids any provision in franchise agreement that waives protections afforded by that statute, and requiring franchisor to prove on remand that enforcement of forum-selection clause will not diminish substantive rights of plaintiffs guaranteed by California law).

Only a few reported decisions in New Jersey involve the enforcement of forum-selection clauses. In *Wilfred MacDonald Inc. v. Cushman Inc.*, 256 *N.J.Super.* 58, 606 *A.*2d 407 (App.Div.), *certif. denied*, 130 *N.J.* 17, 611 *A.*2d 655 (1992), a retailer of turf-maintenance equipment brought suit in New Jersey against its supplier on the ground that the impending termination of part of its dealership product line violated the Franchise Act. The supplier moved to dismiss on the basis of a forum-selection clause in

the dealership agreement that designated Nebraska courts as the exclusive forum. Reversing the trial court's denial of the motion to dismiss, the Appellate Division observed that the record contained no proof of fraud or overreaching in relation to the forum-selection clause, *id.* at 63–64, 606 *A.*2d 407, and expressed confidence in the ability of Nebraska federal and state courts to apply New Jersey law if it was determined that the Franchise Act was implicated. *Id.* at 66, 606 *A.*2d 407. (An unpublished disposition by the Eighth Circuit Court of Appeals reveals that a Nebraska federal court, applying Nebraska rather than New Jersey law, initially denied MacDonald's motion for a preliminary injunction and subsequently granted summary judgment in favor of Cushman, dismissing all claims. The Eighth Circuit affirmed both dispositions. *Wilfred MacDonald, Inc. v. Cushman, Inc.*, 29 *F.*3d 628, 1994 WL 375968 (unpublished) (8th Cir. July 19, 1994)). *See also Shelter Systems Group Corp. v. Lanni Builders, Inc.*, 263 *N.J.Super.* 373–75, 622 *A.*2d 1345 (App.Div.1993) (enforcing forum selection clause against corporate builder and its principal as guarantor, and finding no coercive bargaining power or contrary public policy); *Air Economy Corp. v. Aero–Flow Dynamics*, 122 *N.J.Super.* 456, 457–58, 300 *A.*2d 856 (App.Div.1973) (upholding forum selection clause based on absence of proof that clause was unfair, unreasonable or contrary to public policy); *Fairfield Lease Corp. v. Liberty Temple Universal Church of Christ, Inc.*, 221 *N.J.Super.* 647, 535 *A.*2d 563 (Law Div.1987) (denying summary judgment to lessor of vending machine suing on New York judgment, where jurisdiction over defendant allegedly rested on forum-selection clause in vending machine "boilerplate" lease agreement providing for waiver of personal service, and court determined that record presented factual issues concerning reasonableness and enforceability of forum-selection clause).

### III

We are persuaded that enforcement of forum-selection clauses in contracts subject to the Franchise Act would substan-

tially undermine the protections that the Legislature intended to afford to all New Jersey franchisees. We hold that such clauses are presumptively invalid because they fundamentally conflict with the basic legislative objectives of protecting franchisees from the superior bargaining power of franchisors and providing swift and effective judicial relief against franchisors that violate the Act.

A significant difference exists between the function of a forum-selection clause in an arms-length commercial contract and its function in a typical contract subject to the Franchise Act. For example, the forum-selection clause in *Bremen* was proposed by a German company engaged in the towing of large vessels through international waters, and accepted by an American company engaged in world-wide oil-drilling operations at sea. The towing contract was the subject of competitive bidding and the parties apparently possessed relatively equal bargaining power. Moreover, a forum-selection clause was clearly relevant to the transaction, and may have served the interests of both parties.

In contrast, although some franchisees entering into contracts subject to the Franchise Act may be sophisticated and substantial economic entities, the Act's legislative history as well as our common experience suggests that the financial resources of most franchisees pale by comparison to the financial strength and profitability of their franchisors. Because franchisors usually do business in many markets through multiple dealers, franchisors tend to be larger and more sophisticated entities than franchisees.

At the contract stage, the franchisor typically submits a standard contract and, depending on the potential value and profitability of the franchise, a franchisee may elect not to test the negotiability of terms of the contract to avoid the risk of antagonizing the franchisor and losing the franchise. In that setting, a franchisor has little to lose by including a forum-selection clause in its standard agreement. Although such a clause directly benefits the franchisor by requiring suit to be filed in a geographically convenient state of choice where it can be defended by the franchisor's regular litigation counsel, the indirect benefit to fran-

chisors is to make litigation more costly and cumbersome for economically weaker franchisees that often lack the sophistication and resources to litigate effectively a long distance from home. Particularly in the context of a claim for wrongful termination, a forum-selection clause, if enforced, deprives the franchisee of the right to seek prompt injunctive relief from a New Jersey court, and requires a franchisee to seek that relief, at greater cost and inconvenience, in the designated forum. Thus, if unchallenged by the franchisee, a forum-selection clause can materially diminish the rights guaranteed by the Franchise Act because the franchisee must assert those rights in an unfamiliar and distant forum, with out-of-state counsel, and bear the added expense of litigation in the franchisor's designated forum.

One of the fundamental assumptions of the Franchise Act, verified by the testimony before the Assembly Judiciary Committee, is that the bargaining power of parties to franchise agreements is generally disproportionate. That assumption finds concrete expression in the provisions of the Franchise Act that prohibit franchisors from coercing franchisees to consent to various specified unreasonable conditions in the franchise agreement. See *N.J.S.A.* 56:10–7. Although exceptions undoubtedly will occur, we are convinced that forum-selection clauses in the vast majority of franchise agreements are not the subject of arms-length negotiation between parties of comparable bargaining power. In that connection we note that the Uniform Law Commissioners' *Model Choice of Forum Act* would not authorize enforcement of a forum-selection clause that was obtained by "misrepresentation, duress, the abuse of economic power, or other unconscionable means." *Model Choice of Forum Act* § 3(4) (1968). The Commissioners' comment addressing that provision of the Model Act states: "A significant factor to be considered in determining whether there was an 'abuse of economic power or other unconscionable means' is whether the choice of forum agreement was contained in an adhesion, or, 'take-it-or-leave-it,' contract." *Id.* § 3 cmt. on clause (4).

Accordingly, we hold that forum-selection clauses in franchise agreements are presumptively invalid, and should not be enforced unless the franchisor can satisfy the burden of proving that such a clause was not imposed on the franchisee unfairly on the basis of its superior bargaining position. Evidence that the forum-selection clause was included as part of the standard franchise agreement, without more, is insufficient to overcome the presumption of invalidity. We anticipate that a franchisor could sustain its burden of proof by offering evidence of specific negotiations over the inclusion of the forum-selection clause and that it was included in exchange for specific concessions to the franchisee. Absent such proof, or other similarly persuasive proof demonstrating that the forum-selection clause was not imposed on the franchisee against its will, a trial court should conclude that the presumption against the enforceability of forum-selection clauses in franchise agreements subject to the Act has not been overcome.

The strongest single factor weighing against enforcement of forum-selection clauses in franchise agreements is the Legislature's avowed purpose, plainly expressed in the Franchise Act, to level the playing field for New Jersey franchisees and prevent their exploitation by franchisors with superior economic resources. The general enforcement of forum-selection clauses in franchise agreements would frustrate that legislative purpose, and substantially circumvent the public policy underlying the Franchise Act. As the Supreme Court acknowledged in *The Bremen, supra:* "A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." 407 *U.S.* at 15, 92 *S.Ct.* at 1916, 32 *L.Ed.*2d at 523.

As noted, the Franchise Act attempted to remedy the effects of unequal bargaining power by prohibiting the inclusion in the contract of provisions that would relieve franchisors of liability under the Act or would unfairly prejudice the franchisee in the operation of its franchise. See *N.J.S.A.* 56:10–7. The Legislature sought to prevent franchisors from acquiring the business of a

successful franchisee by preventing termination of franchises without good cause. See *N.J.S.A.* 56:10–5. And in response to concerns about effective enforcement of franchisees' rights expressed at the legislative hearing, the Legislature established a cause of action in the courts of this state for damages, injunctive relief, and counsel fees. *N.J.S.A.* 56:10–10.

That comprehensive legislative design for the protection of New Jersey franchisees would be severely undermined if forum-selection clauses in franchise agreements were to be generally enforced and ultimately were to become commonplace in franchise agreements. In such event, the inevitable result would be to limit severely the availability of New Jersey courts as a forum for the enforcement of franchisees' claims under the Act, a result that the Legislature assuredly would find intolerable.

Contrary to the Appellate Division's view, our concern is not focused only on the likelihood that the court in the designated forum would properly interpret and apply the Franchise Act, but rather on the denial of a franchisee's right to obtain injunctive and other relief from a New Jersey court. The added expense, inconvenience, and unfamiliarity of litigating claims under the Act in a distant forum could, for some marginally financed franchisees, result in the abandonment of meritorious claims that could have been successfully litigated in a New Jersey court. Although the Legislature expressly has prohibited the use of forum-selection clauses only in motor-vehicle franchise agreements, *N.J.S.A.* 56:10–7.3; *supra* at 185, 680 *A.*2d at 623, we entertain little doubt that the Legislature would prefer to extend that prohibition to other franchisees rather than to permit forum-selection clauses to thwart the vindication of franchisees' rights under the Act.

█ Parochialism plays no role in our decision. We have no doubt that courts in other states, both state and federal, would faithfully and fairly apply the Franchise Act to suits within their jurisdiction involving issues controlled by that statute. We recognize, however, that even if a California and a New Jersey court afforded identical relief under the Act to an aggrieved franchisee,

there may be a difference of substantial magnitude in the practical accessibility of that relief from the perspective of an unsophisticated and underfinanced New Jersey franchisee. Nor does our holding in any respect undermine the interests served by enforcing contracts freely negotiated by responsible parties with comparable bargaining power. We simply acknowledge that the vast majority of franchise contracts do not fit within that category. We are confident that a rule of law generally barring enforcement of forum-selection clauses in contracts subject to the Franchise Act best serves the public policies vindicated by the Act and faithfully adheres to the Legislature's objectives in adopting the Act. Although our decision establishes a new rule of law, settled principles dictate that it should apply retroactively to franchise agreements entered into prior to the filing of this opinion. *See Frazier v. New Jersey Mfrs. Ins. Co.*, 142 *N.J.* 590, 606–07, 667 *A.*2d 670 (1995); *Williams v. Bell Tel. Labs., Inc.*, 132 *N.J.* 109, 122–23, 623 *A.*2d 234 (1993).

## IV

We reverse the judgment of the Appellate Division and remand the matter to the Law Division for further proceedings consistent with this opinion.

GARIBALDI, J., dissenting.

The New Jersey Franchise Practices Act, *N.J.S.A.* 56:10–1 to –15 (Franchise Act) prohibits forum-selection clauses only in certain instances between motor vehicle franchisors and franchisees. Notwithstanding the absence of statutory authorization, the majority concludes that "the legislative findings persuade us that the Legislature considered such clauses in general to be inimical to the rights afforded all franchisees under the Act." *Ante* at 185, 680 *A.*2d at 623. The majority therefore contrives a test allowing such clauses only when the franchisor can prove that the clause resulted from good-faith and specific negotiation; a test that, it concedes, is "a rule of law generally barring enforcement." *Ante* at

197, 680 *A.*2d at 628. Because the plain language of the Franchise Act as well as the legislative history provide that forum-selection clauses should ordinarily be enforced, I dissent.

I.

As the majority explains, the modern common-law view is that forum-selection clauses are enforceable unless the clause is the result of "fraud, undue influence, or overweening bargaining power," is "unreasonable," or violates "a strong public policy." *M/S Bremen v. Zapata Off–Shore Co.*, 407 *U.S.* 1, 10–15, 92 *S.Ct.* 1907, 1913–16, 32 *L.Ed.*2d 513, 520–23 (1972).

New Jersey courts have consistently applied that common-law rule to approve forum-selection clauses. *See, e.g., Shelter Systems Group Corp. v. Lanni Builders, Inc.*, 263 *N.J.Super.* 373, 375, 622 *A.*2d 1345 (App.Div.1993); *Wilfred MacDonald, Inc. v. Cushman, Inc.*, 256 *N.J.Super.* 58, 606 *A.*2d 407 (App.Div.), *certif. denied,* 130 *N.J.* 17, 611 *A.*2d 655 (1992); *Air Economy Corp. v. Aero–Flow Dynamics, Inc.*, 122 *N.J.Super.* 456, 457–58, 300 *A.*2d 856 (App. Div.1973).

Courts have rejected the standard that the majority adopts, namely, that unless a party specifically negotiates over the inclusion of a forum-selection clause, it is unenforceable. In *Wilfred MacDonald, supra,* 256 *N.J.Super.* at 64, 606 *A.*2d 407, the Appellate Division enforced the forum selection despite Mac-Donald's contention that the agreement was a boilerplate document and not open to negotiations. Similarly, in *Haskel v. FPR Registry, Inc.*, 862 *F.Supp.* 909 (E.D.N.Y.1994), the plaintiff alleged that the forum-selection clause should not be enforced because the contract was merely a form contract that the defendant used in nearly all its contracts. The court held that "mere absence of negotiation over the actual terms of the contract and the forum-selection clause itself does not make a forum selection clause unenforceable." *Id.* at 916; *see also Carnival Cruise Lines, Inc. v. Shute,* 499 *U.S.* 585, 593, 111 *S.Ct.* 1522, 1527, 113 *L.Ed.*2d 622, 632 (1991) ("As an initial matter, we do not adopt the

Court of Appeals' determination that a nonnegotiated forum selection clause in a form ticket is never enforceable simply because it is not the subject of bargaining."); *Karl Koch Erecting Co. v. New York Convention Ctr. Dev. Corp.*, 838 *F.*2d 656, 659 (2d Cir.1988) (holding forum-selection clause between sophisticated parties enforceable although "the parties engaged in little negotiations over its terms, as is the case with many public contracts entered into after competitive bidding"); *Elite Parfums, Ltd. v. Rivera*, 872 *F.Supp.* 1269, 1273 (S.D.N.Y.1995) (rejecting argument that forum-selection clause is unenforceable if not specifically negotiated); *Weiss v. Columbia Pictures Television, Inc.*, 801 *F.Supp.* 1276, 1279 (S.D.N.Y.1992) (holding forum selection clause enforceable even if parties did not negotiate clause).

In the absence of an alternative rule in the Franchise Act, the common-law rule would apply to the forum-selection clause in the contract here, as well as to all other franchise contracts. Thus, the question is whether the Franchise Act provides a different rule.

## II.

"The interpretation of any statute necessarily begins with consideration of its plain language." *Lammers v. Board of Educ.*, 134 *N.J.* 264, 267, 633 *A.*2d 526 (1993). *Accord State v. Sutton*, 132 *N.J.* 471, 479, 625 *A.*2d 1132 (1993) (Stein, J.) ("As a general rule, we consider first the plain language of the statute."). An examination of the plain language of the Franchise Act establishes that in most cases forum-selection clauses are enforceable.

When the Franchise Act was enacted in 1971, *L.* 1971, *c.* 356, it contained two provisions relevant to forum-selection clause analysis. First, *N.J.S.A.* 56:10–7 lists several practices that are prohibited by the Franchise Act, including any requirement by the franchisor that the franchisee "assent to a release, assignment, novation, waiver or estoppel which would relieve any person *from liability imposed by this act.*" *N.J.S.A.* 56:10–7(a). (emphasis added). Under that provision, the franchise contract may not

waive any substantive rights creating liability. However, that plain language does not prohibit contracts that provide for a different forum to litigate those same rights. *See Alpert v. Alphagraphics Franchising, Inc.*, 731 *F.Supp.* 685, 688 (D.N.J. 1990) ("This provision does not render arbitration clauses unenforceable. An arbitration clause does not relieve a party from liability under the Franchise Act, it simply determines the forum in which relief may be sought.")

Other states have enacted franchise acts that contain broad nonwaiver language. California, for example, prohibits "any condition, stipulation or provision purporting to bind any person acquiring any franchise to waive compliance with *any provision* of this law or any rule or order hereunder." *Cal. Corp.Code* § 31512 (emphasis added). *See also Haw.Rev.Stat.* § 482E–6(2)(F); *Ill. Stat.Ann.* ch. 815, ¶ 705/41; *Mich. Comp. Laws. Ann.* § 445.1527(b); *Minn.Stat.Ann.* § 80C.21; *N.Y. Gen. Bus. Law* ·§ 687(4); *N.D. Cent.Code* § 51–19–16(7); *Okla. Stat. Ann.* Title 71, § 826(C); *Wash. Rev.Code Ann.* § 19.100.220(2); *Wisc. Stat. Ann.* § 553.76. Courts in California and Wisconsin have refused to apply forum-selection clauses because of the broad nature of the non-waiver statutes in those states. *See Wimsatt v. Beverly Hills Weight Loss Clinics Int'l, Inc.*, 32 *Cal.App.*4th 1511, 38 *Cal. Rptr.*2d 612, 613 (1995) ("Yet a critical feature of California's Franchise Investment Law is an antiwaiver statute voiding any provision of a franchise agreement which forces a franchisee to give up any of the protections afforded by the law."); *Lulling v. Barnaby's Family Inns, Inc.*, 482 *F.Supp.* 318, 320 n. (E.D.Wis. 1980) ("The Wisconsin Franchise Investment Law prohibits any attempt by parties to contract out from under Wisconsin law, and thus renders void the clauses requiring the application of Illinois law."). *But see Bakhsh v. JACRRC Enters., Inc.*, 895 *P.*2d 746 (Okla.Ct.App.1995) (enforcing forum-selection clause despite broad non-waiver statute). Had the Legislature desired to bar or restrict forum-selection clauses, it could have chosen to use the same language used by those other states; its decision to use different

language is evidence of its intent to allow forum-selection clauses in accordance with common-law standards.

The other relevant provision that was contained in the original Franchise Act is *N.J.S.A.* 56:10–10, which provides that

Any franchisee may bring an action against its franchisor for violation of this act in the Superior Court of the State of New Jersey to recover damages sustained by reason of any violation of this act and, where appropriate, shall be entitled to injunctive relief.

This provision grants jurisdiction to the Superior Court, but says nothing about the effectiveness of forum-selection clauses whereby the parties agree to litigate elsewhere. *Accord Wilfred Mac-Donald, supra*, 256 *N.J.Super.* at 66–67, 606 *A.*2d 407. Similarly, 28 *U.S.C.A.* § 1333 provides that "[t]he district courts *shall have* original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction." (emphasis added). Despite the even more directory language in that statute, the United States Supreme Court in *Bremen, supra*, approved of a forum-selection clause in a "suit in admiralty." 407 *U.S.* at 3, 92 *S.Ct.* at 1909, 32 *L.Ed.*2d at 517. Like 28 *U.S.C.A.* § 1333, *N.J.S.A.* 56:10–10 is simply a grant of jurisdiction that indicates nothing about the enforceability of forum-selection clauses.

Until 1989, those were the only relevant provisions to assist this Court in considering forum-selection clauses. However, in 1989, the Legislature amended the Franchise Act to address forum-selection clauses. *L.* 1989, *c.* 24. The Legislature declared that

[the] inequality of bargaining power enables motor vehicle franchisors to compel motor vehicle franchisees to execute franchises and related leases and agreements which contain terms and conditions that would not routinely be agreed to by the motor vehicle franchisees absent the compulsion and duress which arise out of the inequality of bargaining power. . . . As a result, motor vehicle franchisees have been denied the opportunity to have disputes . . . heard in an appropriate venue, convenient to both parties, by tribunals established by statute for the resolution of these disputes.

[*N.J.S.A.* 56:10–7.2(b), (c) ].

To remedy the inequality of bargaining power, the Legislature decided that it would be a violation of the Franchise Act to "specif[y] the jurisdictions, venues, or tribunals in which disputes arising with respect to the franchise, lease or agreement shall or

shall not be submitted for resolution or otherwise prohibits a *motor vehicle franchisee* from bringing an action in a particular forum otherwise available under the law of this State." *N.J.S.A.* 56:10–7.3(a)(2) (emphasis added). However, if the franchisee freely agrees to the forum selection by choosing to accept a contract with a forum selection instead of an identical contract without a forum selection, then the clause is enforceable. *N.J.S.A.* 56:10–7.3(b).

The clear meaning of *N.J.S.A.* 56:10–7.3(a)(2) is that the Franchise Act only modifies the common law to prohibit certain forum-selection clauses in motor vehicle franchise agreements, but does not change the common law to prohibit or restrict those clauses in other franchise agreements. Indeed, the Legislature itself has confirmed that understanding. In 1994, Assembly Bill No. 1165 was introduced to extend the prohibition on forum-selection clauses to all franchises. That legislation provided that "it shall be a violation of this act for *any franchisor* ... to require a franchisee at the time of entering into a franchise agreement to assent to any provision which would require that arbitration or litigation be conducted outside this State." 1994 New Jersey Assembly Bill No. 1165, 206th Legislature, First Regular Session (emphasis added). That legislation has not passed, but its introduction clearly indicates that the statute does not currently forbid forum-selection clauses. *See Croswell v. Shenouda*, 275 *N.J.Super.* 614, 621–22, 646 *A.*2d 1140 (Ch.Div.1994) (holding that introduction of bill to amend statute to cover certain category is "strong evidence" that the statute did not currently cover that category.); *see also Borough of Matawan v. Monmouth County Bd. of Taxation*, 51 *N.J.* 291, 299, 240 *A.*2d 8 (1968) ("An amendment ... may be resorted to for discovery of legislative intent in the enactment amended.")

The majority contends that, while the Legislature has only banned forum-selection clauses in motor vehicle franchises, it would find "intolerable" the routine use of forum-selection clauses in other franchise situations. *Ante* at 196, 680 *A.*2d at 628. That

conclusion is clearly wrong in view of the Legislature's apparent tolerance of forum-selection clauses and continued rejection of legislation aimed at banning such clauses. The Court should not short-circuit the democratic process by deciding to create a new statutory hurdle that the Legislature has refused to create on its own.

### III.

As the United States Supreme Court has noted, judicial antipathy to forum-selection clauses is derived from "resistance to any attempt to reduce the power and business of a particular court .... It reflects something of a provincial attitude regarding the fairness of other tribunals." *Bremen, supra,* 407 *U.S.* at 12, 92 *S.Ct.* at 1914, 32 *L.Ed.*2d at 521. *E.g., Wimsatt, supra,* 38 *Cal.Rptr.*2d at 617 (acknowledging that its opinion "sound[s] 'provincial' "). I do not share that provincial attitude and am willing to trust our sister states to properly apply the law.

The majority denies that its motivation in forbidding forum-selection clauses is based upon a provincial attitude that other courts are inferior and cannot be trusted. Instead, the majority writes that its concern is that "the added expense, inconvenience, and unfamiliarity of litigating claims under the Act in a distant forum could, for some marginally financed franchisees, result in the abandonment of meritorious claims that could have been successfully litigated in a New Jersey court." *Ante* at 196, 680 *A.*2d at 628.

However, that argument is unpersuasive. Entre, the franchisee in the current appeal, has hired a prominent New Jersey law firm to handle its appeal, and I cannot see why Entre could not hire a prominent California law firm to handle its case if the forum-selection clause was enforced. In either venue, franchisees will usually hire an attorney who understands and is familiar with the rules of that venue. *See infra* at 207, 680 *A.*2d at 633 (discussing claims of inconvenience).

Although some marginal franchises might not be able to enforce their rights in a foreign court due to the incremental added expense, that does not justify the majority's wholesale creation of

a new pseudo-statutory right. In any category of forum-selection clauses, some marginally financed plaintiffs may be forced to abandon their rights if forced to sue elsewhere. However, we enforce forum-selection clauses because the parties have agreed to those clauses in a freely-negotiated contract.

A franchise agreement is, of course, a contract. As this Court has recognized, that contract "has significant advantages for both parties." *Westfield Centre Service, Inc. v. Cities Service Oil Co.*, 86 *N.J.* 453, 461, 432 *A.*2d 48 (1981). Parties should be allowed to structure their own contracts, including forum-selection clauses. Courts should not rewrite contracts between private parties. If a contract did not benefit both parties, then it would not be signed. Under the common-law, the parties' contract is ordinarily respected. While the Franchise Act does partially limit the parties' freedom to contract, the Court should hesitate before extending that limitation beyond the contours of the Act and further rewriting private contracts. *Cf. Oswin v. Shaw*, 129 *N.J.* 290, 310–11, 609 *A.*2d 415 (1992) (stating that statutes in derogation of common law should be interpreted narrowly to make "the least rather than the most major change in the common law.") (citation omitted).

Defendant entered into contracts with several other resellers; some of those contracts did not contain a forum-selection clause, evidently because those resellers negotiated a change with Sun, presumably in exchange for some further concession. Entre, an experienced, multimillion-dollar computer-reseller that had dealt with many other large computer companies, presumably was free to negotiate a change in its two-page contract, but decided that it was willing to accept the forum-selection clause. "[I]t would be unrealistic to think that the parties did not conduct their negotiations, including fixing the monetary terms, with the consequences of the forum clause figuring prominently in their calculations." *Bremen, supra*, 407 *U.S.* at 14, 92 *S.Ct.* at 1915, 32 *L.Ed.*2d at 523. Absent a legislative decision, the Court should not allow Entre to

modify its contract without providing consideration to defendant in exchange.

## IV.

Aside from the complete lack of statutory authorization for the majority's new test, the test represents poor public policy. I am unwilling to subject the enforceability of forum-selection clauses to a case-by-case evaluation of whether the clause was fairly negotiated or negotiable. Each time that the enforceability of a forum-selection clause is challenged, there will be a lawsuit in which the parties will be put to the difficult task of seeking to recall negotiations of a contract that they agreed to many years before trial.

This case presents an example of the difficulties and the time-consuming and expensive procedure that will result from the Court's holding. Plaintiff has not claimed that there was fraud that would justify a refusal to enforce the choice of forum clause. Nor has plaintiff asserted lack of notice as a defense to the enforcement of the clause. It has not even alleged that Sun refused to negotiate over the clause but merely that "the parties did not discuss the provision and Entre's principals did not understand it to be negotiable."

In contrast, the standard enunciated in *Bremen, supra,* 407 *U.S.* at 10–15, 92 *S.Ct.* at 1913–16, 32 *L.Ed.*2d at 520–23, and *Wilfred MacDonald, supra,* 256 *N.J.Super.* at 63–64, 606 *A.*2d 407, is much easier and less expensive to apply. In the current appeal, the trial court held the forum-selection clause to be enforceable, citing *Wilfred MacDonald, supra,* 256 *N.J.Super.* at 64, 606 *A.*2d 407, where the Appellate Division held the clause to be enforceable even though MacDonald claimed that the Master Agreement was a "boilerplate" document that had not been open to negotiations and was a contract of adhesion. "It is moreover, further significant ... that this was not an agreement entered into by an unaware, unsuspecting dealer. Rather, MacDonald's president

read the forum clause and understood it, yet neither discussed it not questioned it at that time." *Ibid.*

The trial court did not need to conduct a factual hearing to recreate prior negotiations; it simply found that "plaintiff had notice of the forum selection clause and could have objected, but did not, did not disagree with it, nor did he seek modification of the provisions." The court further observed that the contract was only three pages long and that "the provisions of forum selection clause are not hidden, not confusing and are signed by Entre's president." I agree with the standard applied by the trial court and the Appellate Division and would affirm.

Every party seeking to have a court declare a forum-selection clause unenforceable will now allege that the clause was not specifically negotiated. The majority will now force Sun, and all other franchisors affected by this retroactive decision, to prove that they did negotiate the specific provision's inclusion in a negotiation that happened many years ago when the parties never imagined that specific negotiation was required. The majority's test not only makes every trial more expensive and time-consuming, but also fails to recognize the commercial reality that not every clause in a freely-negotiated contract is specifically addressed in negotiations.

## V.

In the absence of any legislative forum-selection rule, I would follow the general approach of *Bremen* and uphold forum-selection clauses absent evidence of (1) fraud or overweening bargaining power, (2) a violation of strong public policy, or (3) serious inconvenience for the trial. *Wilfred MacDonald, supra,* 256 *N.J.Super.* at 63–64, 606 *A.*2d 407 (citing *Bremen, supra*). Plaintiff asserts that the forum-selection clause was the result of overweening bargaining power, violates a strong public policy as embodied in the Franchise Act, and is also seriously inconvenient. None of these claims is persuasive.

As the trial court found, "Entre has been in business for a number of years, since 1983, and has had experience in negotiating resale contracts with a number of suppliers such as IBM, Compaq and Hewlett Packard. Plaintiff ... was a subsidiary of Intelligent Electronics, a billion-dollar computer business." It is, therefore, difficult to see how the contract could be the result of inequalities in bargaining power, especially since other resellers were able to negotiate changes to the forum-selection clause.

Since the Legislature specifically has decided to allow forum-selection clauses, a judicial declaration that forum-selection clauses violate public policy would be a usurpation of the Legislature's role. It would be highly inappropriate for the Court to announce that a contractual term violates public policy, as derived from prior legislative enactments, when the Legislature has specifically decided not to reject that contractual term.

Finally, plaintiff's claim of inconvenience is similarly unpersuasive. "[W]hen it can be said with reasonable assurance that at the time they entered the contract, the parties to a freely negotiated private ... agreement contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable." *Bremen, supra,* 407 *U.S.* at 16, 92 *S.Ct.* at 1916, 32 *L.Ed.*2d at 524. Defendant is headquartered in California while plaintiff was located in New Jersey. Obviously, either jurisdiction would be somewhat inconvenient for one of the parties; as part of the contract, the parties contemplated that plaintiff would face that additional inconvenience. That inconvenience, however, is insufficient to void the forum-selection clause. Plaintiff has not alleged that the inconvenience is such as to leave it, "for all practical purposes ... deprived of [its] day in court." *Bremen, supra,* 407 *U.S.* at 18, 92 *S.Ct.* at 1917, 32 *L.Ed.*2d at 525.

I would therefore uphold forum-selection clauses in franchise agreements unless one of the *Bremen* exceptions applied. As

none of the exceptions apply to this case, I would dismiss plaintiff's suit and require plaintiff to pursue its action in California.

Justice Pollock joins in this opinion.

*For reversal and remandment*—Justices HANDLER, O'HERN, STEIN and COLEMAN—4.

*For affirmance*—Justices POLLOCK and GARIBALDI—2.