PARK INN INTERNATIONAL, L.L.C., Plaintiff,

v.

MODY ENTERPRISES, INC. and Bharat Mody and Champa Mody, Defendants.

No. Civ.A. 99–4415.

United States District Court, D. New Jersey.

June 28, 2000.

372

Lee M. Herman, Haddonfield, NJ, for plaintiff.

Arthur R. Schmauder, Mark C. Errico, Shanley & Fisher, Morristown, NJ, for defendants.

### OPINION

WOLIN, District Judge.

This matter is opened before the Court upon the motion of defendants Mody Enterprises, Inc., Bharat Mody and Champa Mody for dismissal of the complaint against them pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction in this Court over defendants and Rule 12(b)(3) for improper venue. In the alternative, defendants move for a transfer of this matter to the United States District Court for the District of New Mexico pursuant to 28 U.S.C. § 1404(a). The motion has been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the motion will be denied.

### BACKGROUND

The facts relevant to the instant motion are not in dispute and are briefly stated. This matter involves the complaint of Park Inn International, L.L.C., alleging that de-

fendants are in default on the terms of franchise agreement [1] between the parties and that Park Inn has suffered damages thereby. Defendants/franchisees operate four hotels in New Mexico (Mody Supp. Cert. ¶ 3) and are citizens of that state. One of these hotels operates under the Park Inn service mark pursuant to the parties' agreement. Defendants claim that they terminated the franchise agreement pursuant to a right of unilateral termination negotiated by the parties and rightfully deemed part of the franchise agreement.

Plaintiffs have brought suit here and rely upon a forum selection clause in the franchise agreement that reads:

This Agreement will be construed in accordance with the laws of the State of New Jersey. Licensee consents to the nonexclusive personal jurisdiction of the state and federal courts situated in the State of New Jersey and further waives objection to venue in any such court.

Defendants have raised arguments relying on other terms of the franchise agreement and manner in which it was negotiated. Certain other features of the agreement are relevant, therefore. Defendants say that they were solicited by a Mr. Kilcullen, allegedly a representative of Park Inn's parent, to make one of their hotels a Park Inn franchisee. Defendants aver that they approached the possibility of a long-term relationship with Park Inn warily and with trepidation.

For this reason, defendants maintain, they negotiated amendments to Park Inn's standard form agreement. These special points allegedly included a five-year window during which they retained the right unilaterally to terminate the franchise and a cap on liquidated damages for breach not to exceed twelve-months' royalties. Defen-

1. For reasons that will be familiar to practitioners of franchise law, defendants consistently refer to the controlling agreement between the parties and their relationship as a franchise. The agreement itself and plaintiff use the term license. The Court will use the defendants' term in this Opinion solely be-

cause they are the movants and for convenience. This usage shall not be construed to mean that the Court has drawn any conclusions regarding the appropriate characterization of the agreement or what legal consequences, if any, would flow from such a characterization.

dants have submitted documents in the nature of pre-execution term sheets claiming that those documents support their assertion that they successfully negotiated these items.

However, defendants also maintain that their principal, Mr. Bahrat Mody is a native of India and is not fluent in the English language. Mr. Mody avers that he received the final draft of the proposed franchise agreement in the mail and that he executed it without carefully reading its provisions. He states that he relied upon the term sheet he had received earlier and upon the representations of Park Inn representatives that the agreement would contain the provisions of the term sheet. More directly relevant to this motion, defendants claim that they had no idea that the agreement contained a waiver of their right to contest jurisdiction or venue in courts outside of New Mexico. Throughout, defendants maintain, they lacked advice of counsel.

Defendants now say that the franchise did not perform as they had been led to expect. Defendants contend that when they attempted to exercise the special, unilateral termination right defendants believed they had negotiated, Park Inn sued for breach of the agreement. This motion followed.

## DISCUSSION

### 1. Personal Jurisdiction

Federal Rule of Civil Procedure 4(e) mandates that the federal courts exercise personal jurisdiction over non-resident defendants as provided by the long-arm jurisdiction statute of the state where the court sits. New Jersey's long-arm statute extends the reach of the New Jersey courts' jurisdiction to the maximum extent permitted by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. N.J.Rule 4:4–4(c); *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 284 (3d Cir.), *cert. denied*, 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981). Therefore, though technically applying a New Jersey Rule, the courts look to federal constitutional case law to determine matters of personal jurisdiction.

■ The United States Supreme Court has held that a contractual consent to personal jurisdiction should be enforced unless it would be unreasonable or unjust to do so. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 14, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). A forum selection clause will be invalidated only if it was the product of fraud or overreaching, if the agreed forum is so inconvenient as to deprive the litigant of his day in court, or where enforcement would contravene a strong public policy of the forum in which the suit is brought. *The M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10, 18, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

■ Yet defendants argue, correctly, that where a forum selection clause will influence a personal jurisdiction question, the validity of that clause as an element of the parties' agreement is evaluated under state law. *General Engineering Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 356–57 (3d Cir.1986). Somewhat inconsistently, defendants argue that New Jersey law would control the validity of the clause at issue here, presumably applying New Jersey's governmental interest test for choice of law questions and finding that this state has the greater interest in the dispute. *See Gantes v. Kason Corp.*, 145 N.J. 478, 484, 679 A.2d 106 (1996).

Leading back yet again to federal law, however, New Jersey has adopted the approach of the United States Supreme Court in *M/S Bremen*, 407 U.S. at 10, 92 S.Ct. 1907, with respect to forum-selection clauses. *See Kubis & Perszyk Assoc. Inc. v. Sun Microsystems, Inc.*, 146 N.J. 176, 186–93, 680 A.2d 618 (1996) (stating that *Bremen* represents the modern approach to the enforceability of forum-selection clauses). This Court will therefore apply the *Bremen* standard as it has been applied in New Jersey and this Circuit.

Indeed, outside of Franchise Practices Act cases, New Jersey courts routinely

find forum selection clauses prima facie valid and enforceable. *See Caspi v. Microsoft Network, L.L.C.*, 323 N.J.Super. 118, 123, 732 A.2d 528 (App.Div.1999), *certif. denied,* 162 N.J. 199, 743 A.2d 851 (1999); *Wilfred MacDonald, Inc. v. Cushman, Inc.*, 256 N.J.Super. 58, 63, 606 A.2d 407 (App.Div.), *certif. denied,* 130 N.J. 17, 611 A.2d 655 (1992). In fact, New Jersey's treatment of forum selection clauses substantially mirrors the favorable treatment espoused in federal courts. *See McNeill,* 297 N.J.Super. at 219, 687 A.2d 1052; *Wilfred MacDonald,* 256 N.J.Super. at 63, 606 A.2d 407.

Finally, the Court rejects defendants' argument that the policy of the State of New Jersey as announced in *Kubis,* 146 N.J. 176, 680 A.2d 618, requires invalidation of the forum selection clause or that *Kubis* has modified the New Jersey law of forum selection clauses outside of the statutory context in which that case arose. *Kubis* held that in cases governed by the New Jersey Franchise Practices Act, forum selection clauses requiring suit outside this state were subject to a rebuttable presumption of invalidity. 146 N.J. at 186–93, 680 A.2d 618. It is patent that *Kubis* was driven by the view that the policies of the New Jersey Act are served by ensuring that New Jersey franchisees have the benefit of a local forum. *Id.* at 194, 680 A.2d 618 (forum selection clause will detract from rights guaranteed under New Jersey Franchise Practices Act).

But defendants' franchise, if franchise it be, is not subject to the New Jersey Act. *See* N.J.S.A. 56:10–4(a) (Franchise Practices Act "applies only[ ] to a franchise [ ] the performance of which contemplates or requires the franchisee to establish or maintain a place of business within the State of New Jersey"). *Kubis* has no application as a result. *See Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F.Supp.2d 560, 562–63 (D.N.J.2000). To extend *Kubis*'s presumption of invalidity to an out-of-state franchisee's agreement to litigate in this state would have no basis in New Jersey public policy, would not further the purpose of the statute, and would be unwarranted.

Unlike some jurisdictional bars, personal jurisdiction can be waived by the parties. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703–04, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). As the United States Supreme Court wrote over thirty-five years ago, "[I]t is settled ... that parties to a contract may agree in advance to submit to the jurisdiction of a given court ..." *National Equip. Rental, Ltd. v. Szukhent,* 375 U.S. 311, 316, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964). This rule is no more than a manifestation of the principle that personal jurisdiction is a legal right protecting the individual, not a limitation on the power of the Court. *Compagnie de Bauxites,* 456 U.S. at 704, 102 S.Ct. 2099. As such, a party may bargain it away where that party perceives the bargain as advantageous. *See Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 593–94, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (forum selection clause may benefit both parties through economies due to certainty and avoidance of multiple fora).

A failure to read a contract will not excuse a party who signs it, nor will the party's ignorance of its obligation. *Paper Express, Ltd. v. Pfankuch Maschinen GmbH,* 972 F.2d 753, 757 (7th Cir. 1992). Failure to explain the terms of an agreement does not constitute fraud, overreaching or unconscionability so as to void a forum selection clause. *Richardson Greenshields Secs., Inc. v. Metz,* 566 F.Supp. 131, 133 (S.D.N.Y.1983). The enforceability of unread forum selection clauses has frequently been litigated in the context of tickets for passage by ship, usually to the disappointment of the passenger resisting enforcement of the clause. *E.g., Hodes v. Achille Lauro ed Altri-Gestione,* 858 F.2d 905 (3d Cir.1988), *cert. dismissed,* 490 U.S. 1001, 109 S.Ct. 1633, 104 L.Ed.2d 149 (1989); *Marek v. Marpan Two, Inc.,* 817 F.2d 242 (3d Cir.), *cert.*

*denied,* 484 U.S. 852, 108 S.Ct. 155, 98 L.Ed.2d 110 (1987).

■ Obviously a ticket for passage is a far less solemn or important contract than a franchise agreement involving very substantial sums and extending over many years. It has been observed that parties are unlikely ever to read the fine print on a ticket. *Marek,* 817 F.2d at 246. Yet, even there, " '[t]he passenger who omits to read takes the risk of the omission.' " *Id.* at 247 (quoting *Murray v. Cunard S.S. Co.,* 235 N.Y. 162, 139 N.E. 226, 228 (1923) (Cardozo, J.)). Far more than in the casual transaction, defendants here must be charged with notice of the forum selection clause and their failure to read it will not excuse them.

A different result might obtain in the presence of fraud or other unconscionability. The Court might anticipate just such an argument with respect to a failure to include terms alleged to have been specially negotiated and included in the purported term sheet, but allegedly omitted from the formal contract document. There is no claim, however, that the parties ever discussed the issue of forum selection.

■ On the other hand, defendants argue that the lack of negotiation with respect to the forum selection issue shows that the clause was a term of adhesion and procured by overreaching or pressure. The Court rejects this as well. "That there may not have been actual negotiations over [a forum selection] clause does not affect its validity." *Foster v. Chesapeake Ins. Co.,* 933 F.2d 1207, 1219 (3d Cir.), *cert. denied,* 502 U.S. 908, 112 S.Ct. 302, 116 L.Ed.2d 245 (1991). Defendants' own story of the negotiations of other important, special stipulations in the agreement show that they had the ability to exact those concessions that were important to them.

Finally, Court declines to place great weight on defendants' claimed lack of sophistication. The evidence shows that they operate several hotels and employ staff to work in them. The Court makes no finding regarding the relative strength or expertise of the parties. Clearly, however, defendants are sufficiently competent business people to read this fairly straightforward contract, or to perceive the need to hire an attorney to read it for them.

■ This last point also answers the remaining issue under the *Bremen* case regarding the fairness of the forum selection clause. The Court finds that the clause was validly entered into by the parties. The Court also finds that it is not so burdensome, unfair, inconvenient or oppressive as to prevent the Court from enforcing it on that ground. Litigation is expensive in any forum. The financial statements defendants submitted with their application for a Park Inn franchise are now part of the record, and they disclose significant financial resources. Mooney Cert. Ex. B. Defendants have not shown that the added cost of defending themselves in the District of New Jersey will be so prohibitive to them as to deprive them of their day in Court. *Cf. Bremen,* 407 U.S. at 18, 92 S.Ct. 1907.

Consequently, the Court finds that defendants have contractually consented to personal jurisdiction in this Court, and any objection by them to the contrary is deemed waived.

**2. Venue**

■ Defendants' venue objection is quickly dispensed with. Section 1391(a) of Title 28 of the United States Code provides that venue is proper in a diversity case (1) where the defendant resides, (2) where a substantial part of the events giving rise to the claim occurred in the district, or (3) where personal jurisdiction may be had over any defendant if no other venue is proper. Like personal jurisdiction, an objection to venue may be waived. *See* 28 U.S.C. § 1406; *McCoy v. Siler,* 205 F.2d 498, 499 (3d Cir.), *cert. denied,* 346 U.S. 872, 74 S.Ct. 120, 98 L.Ed. 380 (1953). Where a defendant has waived its objection to venue, the Court may hear the matter, even though venue would not otherwise be proper under section 1391. *See*

28 U.S.C. § 1406(b) (venue statute will not "impair the jurisdiction of a district court" where party does raise timely and sufficient challenge to venue).

Plaintiff relies primarily upon defendants' waiver of their venue objection in the forum selection clause. For the reasons set forth in connection with the analysis of defendants' personal jurisdiction objection, the Court find that the forum selection clause is valid and binds defendants. Cast in the terms of section 1406, because defendants previously waived their objection to venue, the instant motion is not "timely or sufficient." Therefore, defendants' venue objection must be denied.

■ In addition, it appears that venue would be proper under 28 U.S.C. § 1391(a)(2) in any event. The statute only requires a "substantial part" of the events to have occurred in the District to establish venue. It does not require a majority of the events to take place here, nor that the challenged forum be the best forum for the lawsuit to be venued. *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir.1994). Those issues may be relevant to whether a transfer of venue should be granted under 28 U.S.C. § 1404(a). They are not dispositive of the issue of proper venue in the first instance.

■ Plaintiff argues that a substantial part of the events giving rise to the claim took place in New Jersey. It contends that Park Inn reviewed and approved the defendants' application for a franchise and the contract itself in New Jersey. At least some of the franchise services that defendants' maintain were inadequate and that led to their termination of the franchise originated in New Jersey. The reservation system claimed not to have produced sufficient bookings was located in this state, and documents generated in the course of the parties relationship were sent from, received and reviewed in New Jersey.

The "substantial part of the events" standard "is intended to preserve the ele-

ment of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Cottman*, 36 F.3d at 294. The issue of fairness to defendant has already been discussed in connection with the issue of personal jurisdiction. Defendants cannot claim that New Jersey has "no real relationship to the dispute." Unlike many franchise cases, this is not a wrongful termination claim predicated upon the franchisor's allegation that the franchisee's business site was of unacceptably low quality. Rather, this is a contract dispute between citizens of two different states, and the events giving rise to the claim are far more evenly balanced between the fora. Thus, 28 U.S.C. § 1391(a)(2) provides an additional ground to deny defendants' motion.

### 3. Transfer under Section 1404(a)

■ In the alternative, defendants move to transfer venue of this matter to the District of New Mexico under 28 U.S.C. § 1404(a). Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

As with the issues already discussed, defendants' 1404(a) motion is overshadowed by the forum-selection clause. When considering a venue transfer motion, "the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir.1995); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 27–32, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). This rule is distinct from the rule discussed above concerning forum selection clauses in the personal jurisdiction context, in which jurisdiction turns on the construction of the forum selection clause under state law.

■ Where venue and transfer questions are raised, federal courts must view a forum-selection clause within the parame-

ters of section 1404 and other related federal laws. *See Stewart Org.*, 487 U.S. at 28–29, 108 S.Ct. 2239; *Jumara*, 55 F.3d at 877–78.

The decision whether to transfer falls in the sound discretion of the trial court. *See Lony v. E.I. DuPont de Nemours & Co.*, 886 F.2d 628, 631–32 (3d Cir. 1989); *Danka Funding, L.L.C. v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.*, 21 F.Supp.2d 465, 474 (D.N.J.1998). In exercising this discretion, the Court must consider certain factors enunciated by the Supreme Court and further developed by the Third Circuit. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Jumara*, 55 F.3d at 879–80. These factors fall into two groups: those relating to the private convenience of the litigants and those affecting the public interest in the fair and efficient administration of justice. *See Jumara*, 55 F.3d at 879–80.

*Jumara* is the Third Circuit's most recent exposition of the private and public interests protected by section 1404(a). Private interests include: (1) the "plaintiff's forum preference," (2) "the defendant's preference," (3) "whether the claim arose elsewhere," (4) "the convenience of the parties as indicated by their relative physical and financial condition," (5) "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora," and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879 (citations omitted).

Public interests include: (1) "the enforceability of the judgment," (2) "practical considerations that could make the trial easy, expeditious, or inexpensive," (3) the relative administrative difficulty in the two fora resulting from court congestion, (4) "the local interest in deciding local controversies at home," (5) "the public policies of the fora," and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879–80.

Within this framework, courts should place great weight on valid forum-selection clauses. While a valid forum-selection clause is not dispositive, "it is entitled to substantial consideration." *Id.* at 880. "Where the forum selection clause is valid, the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum." *Id.* In this case, the various, traditional 1404(a) factors point their several ways. However, the Court finds that the forum selection clause swings the balance decisively against transfer.

Of course, even absent the forum selection clause, "the burden of establishing the need for transfer .... rests with the movant." *Jumara*, 55 F.3d at 879 (citation omitted). In most cases, the plaintiff's forum choice is "a paramount consideration in any determination of a transfer request," *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970), and given great weight in a motion to transfer venue. *See Lony*, 886 F.2d at 633. Indeed, "unless the balance is strongly tipped in favor of the defendant, the plaintiff's choice of forum should not be disturbed." *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 839. The choice is "entitled to greater deference" when a plaintiff chooses a home forum. *Tischio v. Bontex, Inc.*, 16 F.Supp.2d 511, 521 (D.N.J.1998) (quotation omitted); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Some courts have held that the choice of forum by a plaintiff is considered to be presumptively correct, *Lawrence v. Xerox Corp.*, 56 F.Supp.2d 442, 452 (D.N.J.1999), although clearly the presumption can be rebutted.

Moving down the list of private factors, the Court finds as noted in the discussion of the venue issue, that there is no single forum in which the claim arose. In the context of a transfer motion, the better question is, which forum contains the center of gravity of the dispute, its events and transactions? *S.C. Johnson & Son v. Gillette Co.*, 571 F.Supp. 1185, 1188 (N.D.Ill.

1983). Several points in favor of New Jersey as this "center of gravity" have already been mentioned. Leaning toward New Mexico are the perhaps more compelling facts that defendants were in New Mexico when they were solicited by plaintiff's agent. Mody stops short of averring that Kilcullen negotiated with him in New Mexico, suggesting instead that most of these negotiations took place by mail. Notwithstanding, if this were the only issue upon which this motion must be decided, the Court believes that New Mexico would probably prevail as the "center of gravity." New Mexico is clearly not the *locus in quo* to the complete exclusion of New Jersey, however, and its persuasive weight in this motion to transfer is lessened accordingly.

The Court has already discounted the argument that the inconvenience to the defendant in this district is so extreme as to constitute unfairness. The amount of documentary evidence in New Mexico cannot be so voluminous in this matter as to constitute a serious inconvenience. The availability of New Mexico witnesses also does not seriously tip the balance. Witnesses, both willing and unwilling, may be deposed in New Mexico. By making just such a suggestion, plaintiff has waived any objection to this practice. Defendants claim that witnesses such as Kilcullen are not available in New Jersey, but they do not state whether these witnesses are available in New Mexico either. Consequently, it is not clear that a transfer would serve party convenience with respect to these witnesses in any event. Those witnesses within defendants' control will, of course, be available to travel here for trial.

There will, admittedly, be extra expense involved. However, plaintiff would bear this expense if the case were transferred to New Mexico and substituting one party's inconvenience for another's hardly appears a substantial reason for granting this motion. Moreover, the record shows that defendants are not so disadvantaged financially that the additional travel costs will be a factor in their defense of this lawsuit.

Neither do the public interest factors point clearly to New Mexico. Defendants are in no position to argue that the enforceability of a judgment would be more difficult here. In any event, such an argument would be baseless. The local interest in this matter hardly benefits defendants; this community has an interest in trying allegations that a local company has been the victim of a breach of contract. No choice of law issues appear in this case that would give the New Mexico court a decisive advantage over this Court.

Defendants' raise an argument based on what is alleged to be a relative congestion of the trial calendar in this district. First, the calendar of this Court is not so overburdened that parties are denied a reasonably prompt day in court. Moreover, the Court has never found this 1404(a) factor to be among the most important, particularly when the argument is made to transfer to another district because this Court's own docket is heavier. *Moore v. St. Paul Cos.*, 1995 WL 11187, *11 (D.N.J.1995); *Hernandez v. Graebel Van Lines*, 761 F.Supp. 983, 991 (E.D.N.Y.1991). The Court finds that the relatively more crowded docket in this Court does not add substantially to the defendants' argument.

Synthesizing the various factors, the Court finds two of the most important, the forum selection clause and the plaintiff's choice of its home forum militate strongly against transfer. The factors of next importance, convenience of the parties and access to witnesses and evidence, is not so lopsided as to require a contrary result. Moreover, as the Supreme Court discussed in *Carnival Cruise Lines*, economic benefits, convenience and efficiency derived from the forum selection clause are enjoyed, pre-dispute, by both parties to an agreement. 499 U.S. at 593–94, 111 S.Ct. 1522 *see also Danka Funding*, 21 F.Supp.2d at 471 (defendant " 'presumed' " to have received consideration in exchange for agreeing to forum selection clause)

(quoting *Hodes*, 858 F.2d at 913). Post-dispute, the clause may be interpreted to estop defendants' claim of inconvenience. *See Jumara*, 55 F.3d at 880 ("forum selection clause is treated as a manifestation of the parties preferences as to a convenient forum"); *Foster*, 933 F.2d at 1219 (party admitted that clause waived argument of inconvenience).

The public factors already discussed are either not significant or actually weigh against a transfer of this matter. The last public factor, the public policy of the forum, also fails to aid defendants. As already noted, the *Kubis* decision has no operation on these facts, where the franchisee is not a citizen of New Jersey and the franchise is not subject to the New Jersey Franchise Practices Act.[2] That defendants raise this policy-based argument is itself ironic, because the entire thrust of *Kubis* is that franchise disputes should be adjudicated in New Jersey. That case does *not* hold that it is the public policy of New Jersey that all franchisees everywhere should have the advantage of their home forum.

Here, a New Jersey franchisor, presumably to avoid the burden of litigating against franchisees in a multiplicity of jurisdictions, provided in its agreements that disputes would be adjudicated here. This is a valid, commonplace and economically significant contractual term. To the extent a public policy of this state exists on the point, it must be that its citizens can enforce such terms and litigate here, without having this contractual right vitiated by a transfer motion.

The various factors cited by defendants in their argument under 28 U.S.C. § 1404(a), fail to outweigh the substantial weight this Court must give to the forum selection clause and to the plaintiff's choice of its home forum. Therefore, defendants' motion in the alternative for a transfer will be denied.

2.  In fact, as noted *supra* note 1, the Court has not yet ruled whether this case concerns a

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss the complaint against them pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and pursuant to Rule 12(b)(3) for and improper venue will be denied. Defendants' motion in the alternative for an transfer of venue pursuant to 28 U.S.C. § 1404(a) will also be denied.

An appropriate Order is attached.

## ORDER

In accordance with the Court's Opinion filed herewith,

It is on this 28th of June, 2000

ORDERED that defendants' motion to dismiss the complaint against them pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and pursuant to Rule 12(b)(3) for and improper venue is denied; and it is further

ORDERED that defendants' motion in the alternative for an transfer of venue pursuant to 28 U.S.C. § 1404(a) is denied.

franchise at all, as opposed to a license.