906 A.2d 511 (2006)
388 N.J. Super. 160
B & S LIMITED, INC., a New Jersey Corporation and Hotel Acquisition Corp., a New Jersey Corporation, Plaintiffs,
v.
ELEPHANT & CASTLE INTERNATIONAL, INC., Defendant.
Superior Court of New Jersey, Chancery Division, Union County.
Decided May 10, 2006.
*513 Peter Burke, Summit and Brian S. Pantaleo, for plaintiffs (Cooper, Rose & English, L.L.P., attorneys, Summit).
David W. Oppenheim, New York City, for defendant (Kaufman, Feiner, Yamin, Gilden & Robbins, L.L.P., attorneys).
LYONS, P.J.Ch.
Plaintiffs, B & S Limited Inc. ("B & S") and Hotel Acquisition Corp. ("HAC") filed an Order to Show Cause seeking relief by way of preliminary injunction to *514 enjoin the defendant Elephant & Castle International Inc. ("E & C") from proceeding with arbitration in Minneapolis, Minnesota pursuant to the arbitral forum selection clause in the Franchise Agreement entered into by the parties. In order to decide whether the arbitral forum selection clause in the Franchise Agreement is enforceable, the court must review the New Jersey Franchise Protection Act, N.J.S.A. 56:10-1 et. seq., the New Jersey Supreme Court's decision in Kubis & Perszyk Associates Inc. v. Sun Microsystems Computer Corp., 146 N.J. 176, 680 A.2d 618 (1996) and the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA") to determine if extending the New Jersey Supreme Court's decision in Kubis to cover arbitral forum selection clauses would violate the Supremacy Clause of the United States Constitution due to preemption by the FAA. No New Jersey court has ruled on the enforceability of arbitration clauses in franchise agreements subject to both the NJFPA and the FAA. Further, the court must determine if the arbitral forum selection clause and the arbitration clause in the Franchise Agreement are unconscionable under general contract principles.
The facts as presented to court are as follows.
B & S is a New Jersey corporation having its principle place of business in Randolph, New Jersey and HAC is a New Jersey Corporation with its principle place of business in Randolph, New Jersey as well. E & C is a corporation organized under the laws of the State of Texas with its principle place of business in Vancouver, British Columbia, Canada.
On April 12, 2002, B & S and E & C entered into a Franchise Agreement and HAC personally guaranteed B & S's obligations under the agreement. The Franchise Agreement allowed B & S to develop, own and operate an Elephant & Castle restaurant to be located at the Holiday Inn of Springfield in Springfield, New Jersey.
Several provisions of the Franchise Agreement are relevant to the matter before the court, specifically Article 23, Arbitration. Paragraph 23.2, Disputes Subject to Arbitration, states:
Except as expressly provided to the contrary in Article 23.7[1] of this Agreement, all disputes and controversies, including allegations of fraud, misrepresentation and violation of any state or federal laws or regulations, arising under, as a result of, or in connection with this Agreement, the Franchised Location, The Franchisee's Restaurant business or the Personal Guaranty attached to this Agreement are subject to and will be resolved exclusively by arbitration conducted in accordance with the Commercial Rules and Regulations of the American Arbitration Association.
Paragraph 23.5, Venue and Jurisdiction, contains what is essentially a forum selection clause and states:
All arbitration hearings will take place at the general office of Elephant & Castle in the United States or, if no such offices exist in the United States on the date of the written notice of dispute is received, in Minneapolis, Minnesota, and will be held not later than ninety (90) days after the arbitrator(s) has (have) been selected. Elephant & Castle and the Franchisee, its officers and directors and the Owners and Personal Guarantors do hereby agree and submit to such personal jurisdiction in connection with any arbitration hearings hereunder and *515 any suits brought to enforce the decision of the arbitrator(s), and do hereby waive any rights to contest such venue and jurisdiction and any claims that venue and jurisdiction are invalid.
Under Article 24, Enforcement, Paragraph 24.13 states the "[a]ny issue regarding arbitration will be governed by the Federal Arbitration Act and the federal common law of arbitration." Paragraph 24.12 states:
All litigation, court proceedings, arbitration proceedings, mediation proceedings, lawsuits, court hearings and other hearings initiated by the Franchisee or Elephant & Castle must and will be venued exclusively in the county and state in which Elephant & Castle's general offices in the United States are located or, if no such offices exist in the United States on the date of the action is commenced, in Hennepin County, Minnesota. The Franchisee, each of its officers and directors, and the Owners and Personal Guarantors do hereby agree and submit to such personal jurisdiction of the purposes of any suit, proceeding or hearing brought to enforce or construe the terms of this Agreement or to resolve any dispute or controversy arising under, as a result of, or in connection with this Agreement, the Franchised Location or the Franchisee's Elephant & Castle Restaurant, and do hereby agree and stipulate that any suits, proceedings and hearings will be exclusively venued and held in such venue. The Franchisee, each of its officers and directors, and the Owners and Personal Guarantors waive any rights to contest such venue and jurisdiction and any claims that venue and jurisdiction are invalid.
A dispute arose between the parties regarding B & S's failure to submit records of gross sales and to pay continuing fees as required by the Franchise Agreement. On March 17, 2006, E & C filed a demand for arbitration, which stated the arbitration is to take place in Minneapolis, Minnesota. E & C seeks monetary damages from B & S in the amount of $72,323, plus interest, costs and attorneys' fees in the arbitration.
On April 5, 2006, B & S filed this Order to Show Cause seeking to enjoin the arbitration proceedings in Minnesota. In essence, B & S seeks a finding that the forum selection clause of the Franchise Agreement requiring the parties to arbitrate all disputes in Minnesota is void and unenforceable.
B & S argues that in addition to being the home of B & S, New Jersey has extensive contacts to this dispute. B & S states that the Franchise Agreement was executed in New Jersey, New Jersey is the place of business of the restaurant, all records are located in New Jersey and all the witnesses that would testify on behalf of the B & S live in New Jersey. B & S contends that the forum selection clause in the Franchise Agreement was unilaterally imposed upon it against its will and there were no concessions made by E & C for the inclusion of the clause.
B & S's primary argument is that under the New Jersey Supreme Court's decision in Kubis & Perszyk Associates, Inc., supra, 146 N.J. 176, 680 A.2d 618, and its application of N.J.S.A. 56:10-7.3, the forum selection clause in the Franchise Agreement is presumptively invalid. Based on B & S's reply papers, it also takes the position that the arbitral forum selection clause and the arbitration clause are unconscionable under general contract principles.
E & C takes the position that Kubis cannot be extended to provide that agreements to arbitrate in any state other than New Jersey contained in a franchise agreement governed by the NJFPA, *516 N.J.S.A. 56:10-1 et. seq., are presumptively invalid because to do so would run afoul of the FAA, 9 U.S.C. §§ 1-16, and violate the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2. E & C further contends that even if Kubis applied to arbitration agreements, it would be inapplicable to this case because B & S has asserted no causes of action against E & C under the NJFPA.
On the return hearing date of an Order to Show Cause, the court may issue preliminary relief if the movant demonstrates that: (1) an injunction is necessary to prevent imminent and irreparable harm; (2) the movant asserts a settled legal right supporting its claim; (3) the material facts are not controverted; and (4) in balancing the equities or hardships, if injunctive relief is denied then the hardship to the movant outweighs the hardship to the non-movant. Morris County Transfer Station, Inc. v. Frank's Sanitation Serv., Inc., 260 N.J.Super. 570, 574, 617 A.2d 291 (App. Div.1992) (citing Crowe v. DeGioia, 90 N.J. 126, 132-34, 447 A.2d 173 (1982)). The movant carries the burden to prove its entitlement to injunctive relief by clear and convincing evidence. Dolan v. DeCapua, 16 N.J. 599, 612-13, 109 A.2d 615 (1954). As always, equitable relief by a preliminary injunction should not be entered except when necessary to prevent substantial, immediate, and irreparable harm. Subcarrier Communications, Inc. v. Day, 299 N.J.Super. 634, 638, 691 A.2d 876 (App.Div.1997).
The first principle for granting preliminary relief requires that the movant show by clear and convincing evidence that an injunction is necessary to prevent imminent and irreparable harm. Crowe, 90 N.J. at 132, 447 A.2d 173. B & S has stated, through the assertions of counsel, that proceeding with arbitration in Minnesota would diminish its right to defend against E & C's allegations and its right to adequately assert counterclaims. B & S has presented no competent proofs, in the form of affidavits or certifications that would meet the standard of R. 1:6-6, showing that it would be unable to defend the claims made by E & C before an arbitrator in Minnesota. Nor has B & S shown that it would be unable to put on its case in Minnesota. Mere assertions by counsel are insufficient for the court to determine that irreparable harm will occur. B & S also argued that New Jersey is a more convenient forum because all of the relevant documents are in New Jersey, its principle place of business is in New Jersey and all of the potential witnesses are in New Jersey. Again, B & S has submitted no competent proofs as to the volume of documents that must be transported, or as to the number of witnesses that would be required to travel. Moreover, inconvenience alone is not sufficient to rise to the level of imminent and irreparable harm. B & S then, has not shown that it will suffer imminent and irreparable harm if E & C is not enjoined from proceeding with arbitration in Minnesota.
The second principle for granting preliminary relief requires that the movant assert a settled legal right supporting its claim. Crowe, 90 N.J. at 133, 447 A.2d 173. This principle requires the court to engage in an extensive discussion to determine whether the arbitral forum selection clause in the Franchise Agreement is valid and enforceable and whether the arbitral forum selection clause and the arbitration clause are unconscionable. In order to address these issues, the court must review the NJFPA, the New Jersey Court's decision in Kubis and the relevant case law discussing preemption by the FAA.
The NJFPA only applies to a franchisee that maintains a place of business within the State of New Jersey and meets certain *517 gross sales requirements, of which 20% are derived from the franchise. N.J.S.A. 56:10-4. The NJFPA, as enacted by the legislature, addresses concerns relating to both the unequal bargaining power that exists between a franchisor and a franchisee and the unavailability of prompt judicial relief to the franchisee. Kubis & Perszyk Associates. Inc., supra, 146 N.J. at 184, 680 A.2d 618; see N.J.S.A. 56:10-1 et seq. The NJFPA expressly "prohibits franchisors from requiring franchisees to agree to unreasonable standards of performance, or to releases or waivers that would relieve franchisors from liability under the [NJFPA]." Kubis & Perszyk Associates. Inc., supra, 146 N.J. at 184, 680 A.2d 618; N.J.S.A. 56:10-7. The NJFPA expressly authorizes franchisees to institute suit against franchisors "in the Superior Court of the State of New Jersey to recover damages sustained by reason of any violation of this act and, where appropriate,. . . [for] injunctive relief." N.J.S.A. 56:10-10.
In Kubis, the defendant had solicited the plaintiff to serve as a reseller of its computer products and the parties subsequently executed an agreement to that effect. supra, 146 N.J. at 178-80, 680 A.2d 618. The defendant terminated the agreement and the plaintiff sued in New Jersey state court, alleging that the termination violated the NJFPA. Id. at 178-80, 680 A.2d 618. The contract between the parties contained a choice of law and forum selection clause which provided that "any action related to this Agreement will be governed by California law, excluding choice of law rules, and will be brought exclusively in the United States Court for Northern California or the California Superior Court of the County of Santa Clara." Id. at 177-78, 680 A.2d 618. The defendant moved to dismiss the plaintiff's action in New Jersey state court based on this provision. Id. at 180, 680 A.2d 618. The Law Division dismissed the complaint concluding that the forum-selection clause was enforceable, without addressing whether the underlying contract was subject to the Franchise Act. Id. On appeal, the Appellate Division concluded that the forum selection clause should be enforced and affirmed the dismissal. Id. at 180-81, 680 A.2d 618. The New Jersey Supreme Court granted plaintiff's petition for certification. Id. at 178, 680 A.2d 618.
In Kubis, supra, 146 N.J. at 182, 680 A.2d 618, the New Jersey Supreme Court was confronted with the issue of whether forum selection clauses "are reconcilable with the broad statutory protections accorded to New Jersey franchisees under the [NJFPA]." In reaching its decision, the Court looked to N.J.S.A. 56:10-7.3 which states in relevant part:
a. It shall be a violation of the "Franchise Practices Act," P.L. 1971, c. 356 (C. 56:10-1 et seq.) for a motor vehicle franchisor to require a motor vehicle franchisee to agree to a term or condition in a franchise, or in any lease or agreement ancillary or collateral to a franchise, as a condition to the offer, grant or renewal of the franchise, lease or agreement, which:
(1) Requires the motor vehicle franchisee to waive trial by jury in actions involving the motor vehicle franchisor; or
(2) Specifies the jurisdictions, venues or tribunals in which disputes arising with respect to the franchise, lease or agreement shall or shall not be submitted for resolution or otherwise prohibits a motor vehicle franchisee from bringing an action in a particular forum otherwise available under the law of this State; . . .
*518 The Court determined that, although the NJFPA's language refers specifically to motor vehicle franchises, the Legislature intended its proscription of forum selection clauses in franchise agreements to apply to "all franchises under the Act." Kubis & Perszyk Associates. Inc., supra, 146 N.J. at 185, 680 A.2d 618. The Court engaged in an extensive analysis, which included among other things, a survey of federal and state forum selection law. The Court found that "enforcement of forum selection clauses in contracts subject to the [NJFPA] would substantially undermine the protections that the Legislature intended to afford to all New Jersey franchisees." Id. at 192-93, 680 A.2d 618. The Court went on to hold that "such clauses are presumptively invalid because they fundamentally conflict with the basic legislative objectives of protecting franchisees from the superior bargaining power of franchisors and providing swift and effective judicial relief against franchisors that violate the [NJFPA]." Id. at 193, 680 A.2d 618.
In the Kubis decision the forum selection clause at issue controlled the forum for litigation, not arbitration. While the Kubis decision provides an expansive discussion on the legislative history of the NJFPA and the strong public policy of New Jersey in providing franchisee's with prompt and effective judicial relief, the Court does not address the issue of preemption by the FAA. It is that preemption and the Supremacy Clause of the United States Constitution that raise the issues that the court must address today. As noted by the court in Central Jersey Freightliner, Inc. v. Freightliner Corp., 987 F.Supp. 289, 297 (D.N.J.1997), "New Jersey courts have not ruled on the enforceability of arbitration clauses in franchise agreements subject to both the NJFPA and the FAA." In order to determine if Kubis can be extended to provide that an arbitral forum selection clause in a franchise agreement is presumptively invalid the court must look to the FAA, 9 U.S.C. §§ 1-16, and federal cases where the issue of preemption has been addressed.
The FAA is the federal substantive law governing arbitration. When a contract involving interstate commerce contains a valid arbitration clause, the clause is governed by the FAA, specifically section 2, which states:
A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

[9 U.S.C.A. § 2 (emphasis added)]
The United States Supreme Court has observed that "[t]he preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered." Dean Witter Reynolds v. Byrd, 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); see Perry v. Thomas, 482 U.S. 483, 490, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987); Doctor's Associates, Inc. v. Hamilton, 150 F.3d 157, 162 (2d Cir.1998). The FAA has a strong policy in favor of rigorously enforcing arbitration agreements. Doctor's Associates Inc. v. Hamilton, supra, 150 F.3d at 162. In Southland Corp. v. Keating, 465 U.S. 1, 10-11, 104 S.Ct. 852, 858, 79 L.Ed.2d 1, 12 (1984), the United States Supreme Court stated that "[i]n enacting § 2 of the [FAA], *519 Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." Further the "Supreme Court has declared that the FAA preempts all state laws that impermissibly burden arbitration agreements." Doctor's Associates Inc. v. Hamilton, supra, 150 F.3d at 162; see Southland Corp., 465 U.S. at 10-11, 104 S.Ct. at 858, 79 L.Ed.2d at 12. Southland Corp., goes on to state that the Court found "nothing in the [FAA] indicating the broad principle of enforceability [of arbitration agreements] is subject to any additional limitations under state law." 465 U.S. at 11, 104 S.Ct. at 858, 79 L.Ed.2d at 12.
Here the arbitration clause in the Franchise Agreement between the parties is governed by the FAA. The Franchise Agreement itself states in paragraph 24.13 that "[a]ny issue regarding arbitration will be governed by the [FAA] and the federal common law of arbitration." Moreover, there is no dispute that the Franchise Agreement involves interstate commerce, which places the arbitration provision within the purview of § 2 of the FAA.
In Central Jersey Freightliner, Inc., supra, 987 F.Supp. 289, the District Court of New Jersey addressed the enforceability of arbitration clauses in franchise agreements subject to both the NJFPA and the FAA, specifically the applicability of the Kubis holding. In Central Jersey Freightliner, Inc., the court stated that "the FAA and a trilogy of United States Supreme Court decisions issued before the enactment of the NJFPA raise[ed] a question concerning the constitutionality of § 56:10-7.3a(3) under the Supremacy Clause. U.S. Const. art. VI, cl. 2." Id. at 298. The court discussed at length three United States Supreme Court decisions, Moses H. Cane Memorial Hosp. v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), Southland Corp., supra, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 and Perry, supra, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426. In applying the principles articulated in the decisions of the United States Supreme Court, the court found that there existed a clear conflict between the FAA and NJFPA § 56:10-7.3a(3). Central Jersey Freightliner, Inc., supra, 987 F.Supp. at 300. The court stated that,
[w]hile the New Jersey statute does not operate as a wholesale proscription of arbitration clauses in franchise agreements and creates only a presumption of invalidity, the statute clearly limits the enforceability of arbitration clauses by requiring, at the very least, that a franchisor prove that the franchisee was offered an identical agreement without the arbitration provision. While the statute reflects a state policy of providing special protection for franchisees, the Supreme Court held that allowing states to protect franchisees by proscribing arbitration would open the door for state legislatures to `wholly eviscerate Congressional intent to place arbitration agreements upon the same footing as other contracts' and would permit states to override the FAA's policy favoring enforcement of arbitration agreements. Because the FAA was intended to foreclose state legislative attempts to limit the enforceability of arbitration agreements, and because NJFPA § 56:10-7.3a(3) is just such an attempt, the Court holds that NJFPA § 56:10-7.3a(3) violates the Supremacy Clause and is preempted by the FAA.
[Id. (citing Alpert v. Alphagraphics Franchising, Inc., 731 F.Supp. 685, 688 (D.N.J.1990)).]
In Doctor's Associates, Inc. v. Hamilton, supra, 150 F.3d 157, the court again looked *520 at the enforceability of arbitration clauses in franchise agreements subject to both the NJFPA and the FAA, specifically the applicability of the Kubis holding. In Doctor's Associates, Inc. v. Hamilton, appellant franchisee sought review of the order in its action against appellee franchisor that compelled arbitration and enjoined appellant's prosecution of a New Jersey lawsuit against appellee. 150 F.3d 157. In the United States Court of Appeals for Second Circuit, the franchisee argued, among other things, that the district court erred by failing to apply New Jersey law to determine the enforceability of the arbitral forum selection clause. Doctor's Associates, Inc. v. Hamilton, supra 150 F.3d at 161. The franchisee argued that the arbitral forum selection clause was void and unenforceable as against the public policy of New Jersey. Id. at 162. In making this argument, the franchisee relied on the New Jersey Supreme Court's holding in Kubis that a forum selection clause in a franchise agreement which designated an out-of-state judicial forum was presumptively invalid under the state's franchise protection act. Id. The Second Circuit disagreed with the franchisee's position and found that

Kubis did not establish a `generally applicable' contract defense that applies to `any contract;' it invalidated a franchise agreement's forum selection clause under the [NJFPA] because it required the franchisee to sue in another jurisdiction. The Kubis decision applies to one sort of contract provision (forum selection) in only one type of contract (a franchise agreement). Therefore to the extent that Kubis can be read to invalidate arbitral forum selection clauses in franchise agreements, it is preempted by the FAA.
[Id. at 163.]
Based on the previous discussion, the court is satisfied that the Kubis decision is not applicable to a arbitral forum selection clause in a franchise agreement governed by the FAA due to preemption. B & S has not asserted a settled legal right to its claim that the arbitral forum selection clause in the Franchise Agreement is presumptively invalid under the Kubis decision.
While the arbitral forum selection clause is not presumptively invalid under the Kubis decision, the provision may still be challenged under basic contract principles. Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "In determining the validity of an agreement to arbitrate, federal courts `should apply ordinary state-law principles that govern the formation of contracts.'" Circuit City Stores v. Adams, 279 F.3d 889, 892 (9th Cir.2002) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985, 994 (1995)). Therefore, although "courts may not invalidate. . . arbitration agreements under state laws applicable only to arbitration provisions," general contract defenses such as fraud, duress, or unconscionability, grounded in state contract law, may operate to "invalidate arbitration agreements." Doctor's Associates., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 11656, 34 L.Ed.2d 902, 908 (1996) (emphasis in original).
Here, while the Franchise Agreement states in Paragraph 24.13 that "[a]ny issue regarding arbitration will be governed by the Federal Arbitration Act and the federal common law of arbitration," the federal case law dictates that general contract defenses such as fraud, duress or unconscionability, *521 that are grounded in state contract law may be applied. See id. Therefore New Jersey state contract law will be applied to analyze whether the arbitration clause and the arbitral forum selection clause are enforceable. B & S argues that the provisions are invalid and unenforceable because they are unconscionable.
In New Jersey, unconscionability is recognized as a basis for invalidating a contract. See Saxon Constr. And Mgmt. Corp. v. Masterclean of N.C., 273 N.J.Super. 231, 236, 641 A.2d 1056 (App.Div.) ("It is equally well recognized that our courts may refuse to enforce contracts that are unconscionable or violate public policy"), certif. denied, 137 N.J. 314, 645 A.2d 142 (1994). While "[t]here is no hard and fast definition of unconscionability," Lucier v. Williams, 366 N.J.Super. 485, 492, 841 A.2d 907 (App.Div.2004), the Appellate Division in Howard v. Diolosa, 241 N.J.Super. 222, 230, 574 A.2d 995 (App.Div.), certif. denied, 122 N.J. 414, 585 A.2d 409 (1990), described unconscionability as "overreaching or imposition resulting from a bargaining disparity between the parties, or such patent unfairness in the contract that no reasonable person not acting under compulsion or out of necessity would accept its terms." When the issue of unconscionability is addressed, the court looks at two factors, the unfairness in the formation of the contract (procedural unconscionability) and excessively disproportionate terms (substantive unconscionability). Sitogum Holdings, Inc. v. Ropes, 352 N.J.Super. 555, 564, 800 A.2d 915 (Ch.Div. 2002). Procedural unconscionability "can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contact formation process." Id. Substantive unconscionability "suggests the exchange of obligations so one-sided as to shock the court's conscience." Id. at 565, 800 A.2d 915 Applying a "sliding scale" of unconscionability, a claim of unconscionability can succeed when one form of it, e.g., procedural unconscionability, is greatly exceeded, while the other form of it, e.g., substantive unconscionability, is only marginally exceeded. Id. at 565-67, 800 A.2d 915. The issue of unconscionability is one of law for resolution by the court, Gladden v. Cadillac Motor Car Div., General Motors Corp., 83 N.J. 320, 337, 416 A.2d 394 (1980), and the burden of proving unconscionability is on the party asserting it. Howard, supra, 241 N.J.Super. at 230, 574 A.2d 995.
Here, B & S argues in its reply brief, that the arbitration clause should be set aside because it is unconscionable. B & S bears the burden of showing that there was "overreaching or imposition resulting from a bargaining disparity between the parties, or such patent unfairness in the contract that no reasonable person not acting under compulsion or out of necessity would accept its terms." See id.
B & S contends that the forum selection clause in the Franchise Agreement was unilaterally imposed upon it against its will and there were no concessions made by E & C for the inclusion of the clause. B & S further argues that the terms of the Franchise Agreement were the product of unequal bargaining power between the parties and violates public policy. While B & S's counsel makes assertions that E & C is a large international corporation with bargaining power superior to B & S, B & S has presented no competent proofs as to the disparate size between B & S and E & C. No proofs were presented to the court as to the sophistication of the parties or the respective financial positions of the parties. Nor have any proofs been submitted *522 to the court that B & S is an unsophisticated entity or is of limited financial means. Further, no evidence has been submitted to the court that unfair bargaining tactics were used. Mere assertions of counsel are not sufficient for the court find the existence of procedural unconscionability. The proofs that have been submitted to court[2] show that both parties were represented by counsel during the negotiation and execution of the Franchise Agreement. Moreover there are nine pages of Amendments to the Franchise Agreement that convey to the court, there was negotiation between the parties to supplement the Franchise Agreement. Based on the proofs submitted, the court finds that no aspects of procedural unconscionability are present.
In order to find substantive unconscionability, the court must determine that the exchange of obligations was so one-sided it shocks the conscience. The arbitral forum selection clause dictates that the arbitration must occur in Minnesota. Minnesota is not so great a distance from New Jersey nor is the location the "home turf" so to speak of E & C. E & C's principle place of business is Vancouver, British Columbia, Canada, not Minneapolis, Minnesota. The court takes note that B & S has a request pending before the AAA to transfer the arbitration to New Jersey. That request indicates to the court that B & S has an available remedy, or at the least a procedural process by which to proceed to obtain the relief it seeks.[3] Requiring B & S to arbitrate their respective claims in Minnesota does not "shock the conscience" of the court. The court does not find substantive unconscionability.
Because the court has found no merit to a claim of procedural unconscionability or substantive unconscionability, it is not necessary to apply the "sliding scale" of unconscionability to the present action.
The third principle for granting preliminary relief requires that the material facts be uncontroverted. Crowe, 90 N.J. at 133, 447 A.2d 173. Here, the parties entered into a Franchise Agreement, E & C filed a notice to arbitrate and B & S then sought to enjoin the arbitration from proceeding in Minnesota pursuant to the terms of the Franchise Agreement. While B & S contends that there was unequal bargaining power in the negotiation of the Franchise Agreement, it has submitted no competent proofs to support those assertions.
The fourth principle for granting preliminary relief requires the court balance the equities or hardships. Crowe, 90 N.J. at 133, 447 A.2d 173. The court must find that if the injunctive relief is denied then the hardship to the movant outweighs the hardship to the non-movant, namely if the arbitration proceeds in Minnesota, the hardship to B & S outweighs the hardship to the E & C. In balancing the equities here, the court finds them to be almost equal. Neither party has its principle place of business in Minnesota, both parties must travel to the location, and both parties must expend monies to engage in the arbitration. B & S has not shown by clear and convincing evidence any great hardship in having to travel to Minnesota. The inconvenience of traveling to Minnesota to engage in arbitration appears to be equally placed on the shoulders of both *523 parties. The court finds that the hardship to B & S does not outweigh the hardship to the E & C.
Based on the foregoing reasons, B & S's Order to Show Cause to enjoin E & C from proceeding with an arbitration against B & S in the State of Minnesota is denied.
NOTES
[1] Article 23.7 lists disputes not subject to arbitration, none of which are pertinent to the present matter.
[2] Paragraph 8 of the Verified Answer and Affirmative Defenses submitted by E & C states that all parties were represented by counsel.
[3] B & S represented to the court during oral argument that the request was denied. Even though the request was denied, B & S had available by the terms of the Franchise Agreement, a procedural remedy to pursue.