911 A.2d 484 (2006)
389 N.J. Super. 115
Michael ALLEN and James Allen, Plaintiffs-Respondents,
v.
WORLD INSPECTION NETWORK INTERNATIONAL, INC., a Washington Corporation, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 30, 2006.
Decided December 5, 2006.
*485 John E. Glowney, Seattle, WA, (Stoel Rives) of the Washington Bar, admitted pro hac vice, argued the cause for appellant (Drinker Biddle & Reath, and Mr. Glowney, attorneys; John P. Mitchell, Walter J. Fleischer, Jr., Florham Park, and Mr. Glowney, on the brief).
Cara E. Leheny argued the cause for respondent (Wolf, Block, Schorr & Solis-Cohen, attorneys; Ms. Leheny and James Greenberg, Cherry Hill, of counsel and on the brief).
Before Judges LINTNER,[1] S.L. REISNER and SELTZER.
The opinion of the court was delivered by
S.L. REISNER, J.A.D.
Defendant, World Inspection Network International, Inc. (WIN), appeals from a trial court order enjoining WIN from proceeding with arbitration of its dispute with plaintiffs, Michael and James Allen, in the State of Washington and requiring instead that any arbitration must take place in New Jersey. We conclude that the requirement to arbitrate in Washington is an integral part of the arbitration *486 clause in the parties' franchise agreement and therefore falls within the ambit of the Federal Arbitration Act, 9 U.S.C.A. §§ 1 to 16. Under Supremacy Clause principles, the New Jersey Franchise Practices Act, N.J.S.A. 56:10-1 to -29, cannot preclude enforcement of this forum selection provision. We also conclude that the trial judge made insufficient factual findings to justify voiding the forum selection provision under general principles of state contract law, the only relevant exception to enforceability under the Federal Act. Accordingly, we reverse and remand for further proceedings.

I
We begin by briefly reviewing the procedural and factual history.
In 1997, plaintiffs entered into a written agreement with defendant under which plaintiffs obtained a franchise to operate a home inspection service using the World Inspection Network name. Plaintiffs entered into an agreement for additional franchises in 2000. Both versions of the agreement required that disputes arising under the agreement be resolved by arbitration conducted in the State of Washington.[2]
After the parties had a series of disputes, plaintiffs' counsel served defendant with a letter dated January 31, 2005, giving notice that plaintiffs were terminating the franchises. In response, defendant filed a demand for arbitration to be conducted in Washington. Plaintiffs, in turn, filed a verified complaint and order to show cause in the Chancery Division, General Equity, in New Jersey, seeking to enjoin the Washington State arbitration and seeking instead to compel arbitration in New Jersey. Plaintiffs' complaint also sought rescission of the franchise agreement, an accounting, damages, and counsel fees.
In the General Equity action, plaintiffs claimed that the location-selection aspect of the arbitration clause violated the New Jersey Franchise Practices Act, N.J.S.A. 56:10-7.3(a) (NJFPA), which by its terms prohibits motor vehicle franchise agreements from
[specifying] the jurisdictions, venues or tribunals in which disputes arising with respect to the franchise, lease or agreement shall or shall not be submitted for resolution. . . .
[N.J.S.A. 56:10-7.3(a)(2).]
The NJFPA also specifically prohibits mandatory arbitration clauses in motor vehicle franchise agreements, N.J.S.A. 56:10-7.3(a)(3), and provides a presumption against enforcement of such clauses:
For the purposes of this section, it shall be presumed that a motor vehicle franchisee has been required to agree to a term or condition in violation of this section as a condition of the offer, grant or renewal of a franchise or of any lease or agreement ancillary or collateral to a franchise, if the motor vehicle franchisee, at the time of the offer, grant or *487 renewal of the franchise, lease or agreement is not offered the option of an identical franchise, lease or agreement without the term or condition proscribed by this section.
[N.J.S.A. 56:10-7.3(b).]
As construed by the Supreme Court, this prohibition extends to all franchise agreements as follows:
[F]orum-selection clauses in franchise agreements are presumptively invalid, and should not be enforced unless the franchisor can satisfy the burden of proving that such a clause was not imposed on the franchisee unfairly on the basis of its superior bargaining position. Evidence that the forum-selection clause was included as part of the standard franchise agreement, without more, is insufficient to overcome the presumption of invalidity.
[Kubis & Perszyk Assocs. v. Sun Microsystems, Inc., 146 N.J. 176, 195, 680 A.2d 618 (1996).]
Defendant responded that the Federal Arbitration Act (FAA or Federal Act), 9 U.S.C.A. § 2, preempted New Jersey law insofar as State law might preclude a franchisor from requiring a franchisee to arbitrate a dispute in another state. The relevant provision of the FAA requires enforcement of arbitration clauses in commercial contracts, with certain narrow exceptions:
[A] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

[9 U.S.C.A. § 2 (emphasis added).]
Both parties thoroughly briefed the preemption issue. However, the trial court avoided deciding the issue, determining instead based on general equitable principles, that the requirement of arbitration in Washington was unconscionable, a recognized exception under the FAA. On that basis, the trial court entered a final injunction precluding plaintiffs from proceeding with the arbitration in Washington but permitting the parties to engage in arbitration in New Jersey. Accordingly, the parties commenced arbitration in New Jersey.

II
We begin by considering the ground on which the trial court decided this matter. In undertaking our review, we are mindful that "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty v. Manalapan Twp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995).
In their complaint and in their memorandum of law filed with the trial court, plaintiffs did not claim that the arbitration provision was unconscionable. Rather, they relied entirely on the NJFPA and on Kubis, supra, in claiming that forum selection clauses in franchise agreements were presumed invalid unless defendants could overcome the presumption. Nonetheless, the trial court avoided deciding the legal issue before it and instead decided, citing general equitable principles, that the requirement to conduct arbitration in the State of Washington was unconscionable. We conclude this was error, because it was not supported by competent evidence or *488 by legal principles of contract interpretation.
Plaintiffs concede that they did not submit any legally competent evidence in connection with their application. The complaint was not supported by any separate affidavits or certifications. Moreover, the complaint in support of the injunction application was not properly verified, in that the verification of Michael Allen was on "knowledge, information and belief" rather than based on his personal knowledge. R. 1:6-6; Lippmann v. Hydro-Space Technology, Inc., 77 N.J.Super. 497, 504, 187 A.2d 31 (App.Div.1962). Consequently, the verified complaint did not constitute legally competent evidence of the facts stated therein. Other than the 1997 and 2000 franchise agreements themselves, there was no evidence before the trial court with respect to the issue of unconscionability. There was no evidence as to the negotiation of the agreement or whether plaintiffs were represented by counsel during negotiations. Counsel's statements concerning those issues at oral argument did not constitute evidence.
There also was no legally competent evidence as to the additional financial burdens, if any, that either party would incur if the arbitration were conducted in Washington rather than in New Jersey or as to their relative abilities to shoulder any such burdens. We note that both parties in this case retained major law firms to litigate the issue of the location of the arbitration. Nothing in the record indicates whether plaintiffs would have incurred any greater or lesser expense had they simply retained counsel in the State of Washington (with or without the advice and assistance of New Jersey counsel) to represent them in the arbitration there.
In light of the record, we must reject the trial court's conclusion that the forum selection clause was unconscionable. A finding that the clause was invalid under general principles of contract interpretation, if properly supported by legally competent evidence, would be sustainable under the Federal Arbitration Act, 9 U.S.C.A. § 2. However, the trial court's finding in this case, based on the invocation of "equity" without more, cannot be sustained because it is not supported by competent evidence or by application of legal principles to that evidence. Compare B & S Ltd. v. Elephant & Castle Int'l, Inc., 388 N.J.Super. 160, 906 A.2d 511 (Ch.Div. 2006) (analyzing record evidence in detail and concluding franchisee had not demonstrated that arbitration clause was unconscionable). A court of equity cannot abrogate a contract based only on the judge's sense that a provision is unfair. See Dunkin' Donuts of Am., Inc. v. Middletown Donut Corp., 100 N.J. 166, 182, 495 A.2d 66 (1985).
At a minimum, a finding of unconscionability based only on the contract itself requires a finding of "such patent unfairness in the contract that no reasonable person not acting under compulsion or out of necessity would accept its terms." Howard v. Diolosa, 241 N.J.Super. 222, 230, 574 A.2d 995 (App.Div.), certif. denied, 122 N.J. 414, 585 A.2d 409 (1990). We cannot conclude that an agreement to participate in an arbitration in the State of Washington meets the test of patent unfairness. Reasonable persons seeking a potentially lucrative franchise could conclude that the cost of arbitrating disputes in Washington would be outweighed by the economic advantage of having the franchise. See also Rudbart v. North Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 352-61, 605 A.2d 681 (analyzing claim of unconscionability of a contract of adhesion), cert. denied sub nom., First Fidelity Bank, N.A. v. Rudbart, 506 U.S. 871, 113 S.Ct. 203, 121 L.Ed.2d 145 (1992).
*489 While we reject the trial court's reasoning, we may still affirm the injunction if there are alternate grounds to support it. Hence, we turn to the preemption issue the trial court did not decide.
We begin by considering Kubis & Perszyk Assocs. v. Sun Microsystems, Inc., supra, which is the foundation of plaintiffs' claim of protection under the NJFPA. Kubis addressed a judicial forum selection clause. In that case, a franchise agreement required that disputes be litigated in the courts of California. After reviewing the strong legislative policy reflected in the NJFPA, to shield franchisees against abuses at the hands of franchisors with superior bargaining power, the Court reasoned:
Particularly in the context of a claim for wrongful termination, a forum-selection clause, if enforced, deprives the franchisee of the right to seek prompt injunctive relief from a New Jersey court, and requires a franchisee to seek that relief, at greater cost and inconvenience, in the designated forum. Thus, if unchallenged by the franchisee, a forum-selection clause can materially diminish the rights guaranteed by the Franchise Act because the franchisee must assert those rights in an unfamiliar and distant forum, with out-of-state counsel, and bear the added expense of litigation in the franchisor's designated forum.
[Kubis, supra, 146 N.J. at 194, 680 A.2d 618.]
Similarly, in explaining the basis for its decision the Court indicated:
[The Act's] comprehensive legislative design for the protection of New Jersey franchisees would be severely undermined if forum-selection clauses in franchise agreements were to be generally enforced and ultimately were to become commonplace in franchise agreements. In such event, the inevitable result would be to limit severely the availability of New Jersey courts as a forum for the enforcement of franchisees' claims under the Act, a result that the Legislature assuredly would find intolerable.
Contrary to the Appellate Division's view, our concern is not focused only on the likelihood that the court in the designated forum would properly interpret and apply the Franchise Act, but rather on the denial of a franchisee's right to obtain injunctive and other relief from a New Jersey court. The added expense, inconvenience, and unfamiliarity of litigating claims under the Act in a distant forum could, for some marginally financed franchisees, result in the abandonment of meritorious claims that could have been successfully litigated in a New Jersey court.
[Id. at 196, 680 A.2d 618.]
Kubis did not address arbitration clauses in franchise agreements, and, hence, did not address the issue of possible federal preemption by the FAA. Consequently, although Kubis is instructive insofar as it reviews the public policy underlying the Franchise Act, it is not controlling with respect to the critical issues in this case.
The preemption issue was addressed by the United States Supreme Court which held, in a California case:
The California Supreme Court interpreted [its State's franchise] statute to require judicial consideration of claims brought under the state statute and accordingly refused to enforce the parties' contract to arbitrate such claims. So interpreted the California Franchise Investment Law directly conflicts with § 2 of the Federal Arbitration Act and violates the Supremacy Clause.
[Southland Corp. v. Keating, 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1, 11-12 (1984).]
*490 The preemption issue concerning the NJFPA was specifically addressed by the United States District Court for the District of New Jersey, which held, under the Supremacy Clause, that the NJFPA was preempted by the FAA insofar as the NJFPA precluded arbitration clauses in franchise agreements:
[W]hile the New Jersey statute does not operate as a wholesale proscription of arbitration clauses in franchise agreements and creates only a presumption of invalidity, the statute clearly limits the enforceability of arbitration clauses by requiring, at the very least, that a franchisor prove that the franchisee was offered an identical agreement without the arbitration provision. While the statute reflects a state policy of providing special protection for franchisees, the Supreme Court held that allowing states to protect franchisees by proscribing arbitration would open the door for state legislatures to "wholly eviscerate Congressional intent to place arbitration agreements `upon the same footing as other contracts' and would permit states to override the FAA's policy favoring enforcement of arbitration agreements. Because the FAA was intended to foreclose state legislative attempts to limit the enforceability of arbitration agreements, and because NJFPA § 56:10-7.3a[] is just such an attempt, the Court holds that NJFPA § 56:10-7.3a[] violates the Supremacy Clause and is preempted by the FAA.
[Cent. Jersey Freightliner, Inc. v. Freightliner Corp., 987 F.Supp. 289, 300 (D.N.J.1997) (citation omitted) (footnote omitted).]
Notably, however, the court in Central Jersey Freightliner also concluded that, under Federal law,
[t]he parties' agreement to submit their disputes to arbitration does not preclude this Court from granting a preliminary injunction to preserve or restore the status quo, provided that the moving party satisfies the standards for preliminary injunctive relief.
[Id. at 295.]
In reaching its conclusion the District Court relied on Ortho Pharmaceutical Corp. v. Amgen, Inc., 882 F.2d 806, 812 (3d Cir.1989), in which the Third Circuit Court of Appeals reasoned:
As the Supreme Court stated in Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the Arbitration Act was "motivated by a congressional desire to enforce agreements into which parties had entered." Id. at 220[, 105 S.Ct. 1238]. We believe that an arbitration agreement reflects the parties' intention to adhere to an orderly process of alternative dispute resolution. Therefore, we do not construe such an agreement as constituting a "waiver" by either party of the right to seek preliminary injunctive relief necessary to prevent one party from unilaterally eviscerating the significance of the agreed-upon procedures.
Accordingly, the District Court considered whether the franchisee-plaintiffs were entitled to an injunction under the terms of the NJFPA, but concluded that they had not submitted sufficient evidence to entitle them to injunctive relief. Cent. Jersey Freightliner, supra, 987 F.Supp. at 295-97. Hence, we conclude that even if the FAA requires that we enforce arbitration clauses in franchise agreements, a franchisee's important right to maintain the status quo pending arbitration, by seeking "injunctive relief from a New Jersey court," Kubis, supra, 146 N.J. at 194, 680 A.2d 618, is preserved.
Of course, in this case, the franchisor is not seeking to terminate the franchise. Rather, the plaintiffs-franchisees are seeking *491 rescission and damages. Hence, the most urgent policy concern underlying the NJFPAthat an overbearing franchisor will destroy a franchisee's business before the franchisee can obtain injunctive reliefis not implicated here. This case appears to be primarily about money damages, a matter well-suited to arbitration. Based on our reading of Kubis, however, we infer that the Court would conclude that a franchisee's right to a New Jersey forum, even if it is arbitration, remains an important aspect of our State's public policy as expressed in the Franchise Act.
Against this backdrop, we consider whether the location-selection aspect of the arbitration clause is a sufficiently integral part of the arbitration agreement that it is covered by the FAA. Plaintiffs contend that the purpose of the Federal Act was to protect and encourage the right to arbitration as a means of dispute resolution, and that the location in which the arbitration takes place is not a concern the Federal Act was intended to address. Defendant contends that the arbitration clause must be enforced as a whole, and that picking and choosing which portions to enforce would permit States to eviscerate the Federal Act's underlying purpose to enable parties to commercial transactions to freely contract for the means of resolving their disputes.
In construing the FAA, the Supreme Court has rejected efforts to restrict the Federal Act's scope so as to permit State regulation of arbitration clauses. For example, in Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 268, 115 S.Ct. 834, 836, 130 L.Ed.2d 753 (1995), the Court held that the Federal Act's definition of contracts "involving commerce," 9 U.S.C.A. § 2, should be construed broadly rather than narrowly, so as to preclude Alabama from prohibiting an arbitration clause in a contract for residential termite eradication. The Court emphasized that the exception in section 2 for general state contract law meant that States could not discriminate against arbitration clauses:
In any event, § 2 gives States a method for protecting consumers against unfair pressure to agree to a contract with an unwanted arbitration provision. States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added). What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause. The Act makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal "footing," directly contrary to the Act's language and Congress' intent. See Volt Information Sciences, Inc., 489 U.S. at 474[, 109 S.Ct. 1248].
[Id. at 281, 115 S.Ct. at 843, 130 L.Ed.2d at 769.]
Likewise, in Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), the Court agreed with the California Court of Appeal that the FAA protected the parties' right to arbitrate under the terms they had agreed upon including, in that case, the choice of law applicable to the arbitration:
"[T]he thrust of the federal law is that arbitration is strictly a matter of contract," the parties to an arbitration agreement should be "at liberty to choose the terms under which they will arbitrate." Where, as here, the parties have chosen in their agreement to abide by the state rules of arbitration, application of the FAA to prevent enforcement *492 of those rules would actually be "inimical to the policies underlying state and federal arbitration law," because it would "force the parties to arbitrate in a manner contrary to their agreement."
[Id. at 472, 109 S.Ct. at 1252, 103 L.Ed.2d at 496 (citations omitted).]
We believe the Court would reach the same conclusion with respect to a provision that dictates where the arbitration shall take place. It is part of the agreement, and must be enforced unless contrary to general principles of state contract law. See Perry v. Thomas, 482 U.S. 483, 490, 107 S.Ct. 2520, 2526, 96 L.Ed.2d 426, 436 (1987) (FAA reflects Congressional policy to "enforce private agreements into which parties had entered" and such agreements "must be rigorously enforce[d]." (internal quotations and citations omitted)).[3]
Although not directly on point, we conclude that the Supreme Court's recent decision in Muhammad v. County Bank of Rehoboth Beach, ___ N.J. ___, ___ A.2d ___, 2006 WL 2273448 (2006), illustrates the correct approach. In that case the Court considered an arbitration clause in a consumer contract that prohibited the consumer from participating in class-wide arbitration. Although it might have been argued that the ban on class actions was not an integral part of the arbitration agreement, the Court treated the clause as though it was and therefore was subject to the preemptive force of the FAA. Hence the Court analyzed the provision under section 2 of the FAA which "does not preclude an examination into whether the arbitration agreement at issue is unconscionable under State law." Id. at *4, at ___, ___ A.2d at ___. The Court then considered whether the prohibition on class actions would undermine both the State's policy favoring class actions in certain circumstances, as well as the State's specific interest in enforcement of the Consumer Fraud Act. Id. at *8-9, at ___-___, ___ A.2d at ___-___. Because the Court concluded that the arbitration clause was part of a contract of adhesion, it conducted a detailed analysis of all of the relevant factors pertaining to unconscionability of contracts of adhesion, as articulated in Rudbart v. North Jersey Dist. Water Supply Comm'n, supra. Based on that analysis, the Court concluded that the clause was unconscionable. Muhammad, supra, 2006 WL 2273448, at *1, at ___, ___ A.2d at ___.
We conclude that the analysis in this case should follow Muhammad. The location-selection clause is subject to the FAA, because it is part of the arbitration clause. Therefore, the clause must be analyzed under general state law principles to determine whether it is unconscionable. We would also conclude, however, that the general legislative policies underlying the NJFPA may be considered as a factor in that analysis, just as the policies underlying the Consumer Fraud Act were considered as a factor in Muhammad. In that analysis, however, plaintiffs must bear *493 the burden of proving unconscionability, as they would in any other case litigated under general state contract law. They cannot avail themselves of the special burden-shifting presumption against forum selection clauses as articulated in Kubis, supra, because that presumption in effect discriminates against arbitration clauses.
However, rather than conduct this analysis ourselves, we conclude that the matter should be remanded to the trial court for further proceedings. We reach this conclusion because, as discussed earlier in this opinion, the record before the trial court was devoid of any evidence on the issue of unconscionability. There is not even evidence as to whether this was a contract of adhesion or whether it was subject to negotiation. Hence, there was no factual basis on which the trial court could conduct the unconscionability analysis which Muhammad requires, and there was no evidentiary basis on which to issue an injunction.
We also note that there was no legally competent evidence before the trial court to support a conclusion that plaintiffs would suffer irreparable injury if required to proceed with arbitration in Washington as opposed to New Jersey. See Crowe v. De Gioia, 90 N.J. 126, 132-34, 447 A.2d 173 (1982). Even assuming that under some circumstances, expense and inconvenience alone might rise to the level of irreparable harm (for example, if arbitration in a foreign jurisdiction would be completely beyond a litigant's means or would preclude the availability of witnesses), there is no evidence on that issue in this record.
For all of these reasons, we conclude that the injunction must be vacated and the matter remanded to the trial court for further proceedings consistent with this opinion.[4]
Reversed and remanded.
NOTES
[1] Judge Lintner did not participate in oral argument. However, with the consent of counsel he has joined in this opinion. R. 2:13-2(b).
[2] Both versions provided that the Federal Arbitration Act, 9 U.S.C.A. §§ 1 to 16, would apply to procedural and jurisdictional issues concerning arbitration of disputes under the agreement, and the Lanham Act, 15 U.S.C.A. §§ 1051 to 1127, would govern disputes over trade name issues. Unlike the 1997 agreement, the 2000 agreement provided that the laws of the State of Washington, instead of New Jersey law, would apply to all other issues. However, defendant's brief implicitly concedes that the arbitrators would apply New Jersey law to the substance of the underlying dispute, as they contend that plaintiffs' substantive claims under the New Jersey Franchise Protection Act and the New Jersey Consumer Fraud Act should be decided at arbitration. Hence the only issue before us is in which State the arbitration should take place.
[3] We find Keystone, Inc. v. Triad Sys. Corp., 292 Mont. 229, 971 P.2d 1240 (1998), unpersuasive. There the Montana Supreme Court held that the FAA did not preempt a state statute which generally prohibited forum selection clauses requiring Montana residents to litigate outside Montana. Pursuant to that general statute, the Court invalidated an agreement requiring arbitration in California. First, we do not agree that a forum selection provision in an arbitration clause can be thus parsed out and excepted from the FAA. And second, New Jersey has no such general policy prohibiting contractual agreements to litigate in an out-of-State forum; to the contrary, our courts treat such agreements as "prima facie enforceable." Paradise Enterprises v. Sapir, 356 N.J.Super. 96, 107, 811 A.2d 516 (App.Div.2002), certif. denied, 175 N.J. 549, 816 A.2d 1050 (2003).
[4] Since we have not previously addressed the location-selection issue, we conclude plaintiffs should be permitted an opportunity on remand to amend their complaint to include their unconscionability claim and to file a motion for an injunction, if supported by legally competent evidence. Since in any event there will be further proceedings in the trial court, we do not address the issue of counsel fees.